CITY OF ROCHESTER, Plaintiff, *v.* CHARLES B. TUTTY, JR., Defendant.

City Court of Rochester, Criminal Branch, October 7, 1938.

*Daniel J. O'Mara,* District Attorney [*Thomas J. Culhane* of counsel], for the city of Rochester.

*John J. Bennett, Jr.,* Attorney-General [*Donald J. Corbett* of counsel], for the defendant.

TOMPKINS, J. The defendant is charged with parking his automobile more than thirty minutes in a public street where the parking is limited, by signs properly posted, to one-half hour. The defendant is a probation officer of the County Court of Monroe county. He parked his automobile about nine-thirty A. M. and it remained parked until after ten-thirty A. M. During this period he was engaged in his regular official duties at the probation offices in the Monroe County Court House.

His duties require him to use an automobile and, in so using, it necessarily remains parked at times for over thirty minutes. While

not included in the enumerated " peace officers " of section 154 of the Code of Criminal Procedure, he is a " peace officer " for certain purposes, and as such may execute warrants for the arrest of probationers.

The defendant asserts that, as a probation officer, he is exempt from the mandates of the parking regulations of the city of Rochester. The traffic ordinance of the city of Rochester, by section 97, provides: " The driver of a vehicle shall not park such vehicle * * * in any street for a period longer than designated by the Commissioner of Public Safety." Section 103 of the ordinance provides that " a Commissioner of Public Safety is hereby authorized to post suitable signs, showing periods during which parking is permitted." At the place where defendant's car was parked were suitable signs stating that cars may not be parked over thirty minutes.

It has been held that " Stop " signs erected at intersections are presumed to be lawfully maintained. (*Bailey* v. *Herrmann*, 253 App. Div. 125.) The same presumption should apply to parking signs erected along public streets.

The parking provisions of the traffic ordinances are within the power of the common council to enact. The City Charter (Laws of 1907, chap. 755), section 85, provides that the common council may enact ordinances not inconsistent with law, for, among other things, " the preservation of good order * * * the safety and welfare of its inhabitants." The ordinance clearly comes within those qualifications. Section 86, subdivision 1, of the Vehicle and Traffic Law provides: " The legislative body of a city * * * or any municipal official or body designated by it, is authorized to designate by ordinance or regulation * * * parking spaces * * * and to limit or prohibit parking in spaces and zones in such public streets, and such * * * spaces * * * shall be marked and indicated by suitable signs, and all drivers shall obey the rules and regulations prescribed." These provisions of the statute specifically authorize the ordinance in question.

May the defendant escape the mandate of the ordinance because the automobile he parked is used in the performance of his official duties? The ordinance states: " The driver of a vehicle shall not park such vehicle," etc. No exception is stated. The statute proclaims: " all drivers shall obey," etc. No exemption is granted either to private persons or public officials.

It is true that certain restricted privileges are granted to certain enumerated vehicles. Section 82, subdivision 1, of the Vehicle and Traffic Law gives to United States mail, police, fire and certain other vehicles the right of way " when in the performance of duty."

Section 86, relating to parking, makes no exceptions and grants no immunities. The ordinance includes the drivers of all vehicles. The defendant as a probation officer comes within its mandate.

That the defendant herein was a public official did not exempt him from the mandate of the ordinance. He, like any other citizen, must bow to its command. In *People* v. *Schwartz* (265 N. Y. 310), where the defendant, a deputy sheriff, was charged with overtime parking, Chief Judge POUND said: " Unless some divinity doth hedge a deputy sheriff " he still must obey. In *City of Rochester* v. *Lindner* (167 Misc. 790), which involved a game protector charged with violating a speed ordinance, my associate, Judge WILDER, said: " It may be that, as applied to an official act in an emergency or other matter of vital importance to the public, ' the king can do no wrong.' Even so, the public servant is not a prince of the royal blood. Official necessity is not to be mistaken for personal privilege, nor authority for impeccability." It is not urged that officers of the probation department are either hedged around by divinity, or are assumed to be " princes of the royal blood."

There are certain emergencies which may create immunity. A police officer must exceed the speed limit in order to catch a violator. Necessity permits him to escape its mandate. (*Edberg* v. *Johnson,* 149 Minn. 395; 184 N. W. 12.) That emergencies may excuse is recognized by the Court of Appeals in the *Schwartz* case (*supra*) where the court stated: " No emergency excused him." The regular duties of a probation officer do not create a continuing emergency which warrants his parking overtime. There was no present compelling necessity in the case at bar. The defendant was engaged in the performance of his regular duties. In parking over thirty minutes, he violated the ordinance.

If probation officers should, in the performance of their duties, be permitted to park overtime, provision therefor must be made by the common council or its proper representatives. The court must construe the ordinance as it stands. The defendant is guilty of violating its provisions. In view of the fact that this is a test case, sentence is suspended.