LAWRENCE L. EPOLITO, Plaintiff, *v.* THOMAS EPOLITO et al., Defendants.

MICHAEL BELPULSI, an Infant, by JOSEPHINE BELPULSI, His Guardian ad Litem, Plaintiff, *v.* THOMAS EPOLITO et al., Defendants.

Supreme Court, Trial Term, Onondaga County, February 14, 1947.

*Charles Rinaldo* for plaintiff.

*Sidney Coulter* for Thomas Epolito, defendant.

*Byrne, Byrne & Lowery* for Frank G. Renaud, defendant.

SEARL, J. Verdicts have been returned in favor of both plaintiffs against the defendant, Frank G. Renaud. Plaintiff Belpulsi moves to set aside the verdict as inadequate.

During trial a question was presented as to whether defendant Renaud, driving westerly, was required to comply with a "stop" sign erected at the northeasterly corner of Park and Kirkpatrick Streets, within the corporate limits of the city of Syracuse. The court refused to submit to the jury the application to this defendant of the stop sign. The subject is of sufficient importance to deserve some consideration.

Subdivision 6 of section 88 of the Vehicle and Traffic Law provides: " No person shall fail, neglect or refuse to comply with * * * any lawful traffic regulations displayed in any highway."

The question now presented is " What are lawful traffic regulations ", as applied to the City of Syracuse? The Legislature has granted to local authorities broader powers regarding regulation of traffic by amendments to section 90 (L. 1945, chs. 386, 455, 506, 616; L. 1946, ch. 835). The pertinent provisions presently involved are contained in subdivision 2 thereof: " The legislative body of a city, village, town of the first class, or town of the second class, having a population in excess of twenty-five thousand, *may by ordinance designate* certain public highways or parts of highways, respectively, in such city, or village, or in such town outside of any villages therein and not including state highways maintained by the state therein, as main arteries of travel and require that all vehicles and street surface cars approaching a main artery of travel *on any public highway designated by ordinance* shall, before entering the same come to a full stop unless otherwise directed by a peace officer or signal. * * * Signs bearing the word ' stop ' shall be erected and maintained at or near the intersecting line of such main arteries

of travel on all public highways *designated by ordinance* on which vehicles shall, before entering such main artery of travel come to a full stop. * * * "

In the instant case plaintiffs had referred to the erection of the " stop " sign, according to ordinance of the City of Syracuse, at the corner of Park and Kirkpatrick Streets referred to. However, plaintiffs had offered no proof of the existence of any ordinance designating Park Street as a " main artery of travel ". The court afforded an opportunity to plaintiffs after their cases were closed to introduce any applicable city ordinance. Counsel for plaintiffs announced, however, that none could be discovered, although the "stop " sign at the intersection had been there for years.

The court is not unmindful of the fact that the Fourth Department has passed on several cases involving the effect of " stop " signs erected outside of cities or upon highways entering State, county, or town highways. *Bailey* v. *Herrmann* (253 App. Div. 125, 126) held that as a town had a right to erect a " stop " sign on a town highway, " It will be presumed that the ' Stop ' sign was lawfully erected and maintained ", citing *Meadows* v. *Lewis* (235 App. Div. 243). The *Per Curiam* opinion held that the driver violated the Vehicle and Traffic Law (§ 88, subd. 6) if the road were a town highway, and the Highway Law (§ 102, subd. 12) if it were a county highway. In either event, there was violation of statute. Subdivision 16 of section 64 of the Town Law gives to a town the right to " * * * purchase, lease, install and maintain traffic signals and standards, for the control of traffic upon streets and highways outside the limits of any incorporated village or city." Thus authority is given to towns without further action by the town.

Justice THOMPSON, writing for the Fourth Department in *Meadows* v. *Lewis* (235 App. Div. 243, *supra*), pointed out that there was a presumption that a "stop " sign was suitably constructed, erected, and maintained. However, this was because of the provisions contained in subdivision 12 of section 102 of the Highway Law, formerly section 185, granting to the Superintendent of Public Works, now to the Superintendent of Highways of any county, in his discretion power to erect and maintain on any or all roads or highways, outside of cities and villages, suitable signs or signals warning drivers of vehicles to bring such vehicles to a full stop.

Still a third authority appears from this Fourth Department in *Manard* v. *Sheppard* (243 App. Div. 265). We already have

referred to authority to erect stop signs in rural districts. In the *Manard* case (*supra*), a city is involved. A city ordinance of Buffalo required a driver to come to a full stop before crossing Seventh Street. " The Vehicle and Traffic Law (§ 90, subd. 2) authorized the legislative body of the city to pass such an ordinance." (P. 266.) The lower court in its charge told the jury that this provision in the Vehicle and Traffic Law gave to the city ordinance the effect of a statute, that if the driver failed to stop, he was guilty of negligence. This the appellate court held to be " technically incorrect ". The appellate court held, however, that inasmuch as subdivision 6 of section 88 of the Vehicle and Traffic Law provided that " No person shall fail, neglect or refuse to comply with * * * any lawful traffic regulations displayed in any highway " the faulty charge as to the effect of the ordinance did not change the net result and affirmed the judgment.

The significant feature in the *Manard* case (*supra*) is that a city ordinance existed. In the instant case, no such ordinance has been shown to exist as regards this particular intersection.

In *City of Rochester* v. *Tutty* (169 Misc. 358, 359) where there was a charge of violation of a parking ordinance, the court remarked, " It has been held that ' Stop ' signs erected at intersections are presumed to be lawfully maintained. (*Bailey* v. *Herrmann,* 253 A. D. 125)." Reference, however, to the facts in *Bailey* v. *Herrmann* (*supra*) indicates that the stop sign was on a town highway and as a matter of right the town had authority to erect the sign. The distinction is clear between cases where the erection is a matter of right or discretion and, on the other hand, where the adoption of an ordinance is a prerequisite. In the case before us it was a prerequisite.

The conclusion at which we arrive seems to find confirmation in the decision of the Court of Appeals, *Lee* v. *City Brewing Corporation* (279 N. Y. 380, 385). " There is no evidence in the case that failure to stop, if there was any such failure, was in violation of any ordinance since no ordinance was proven nor did it appear by what authority the sign was erected."

Counsel in the instant case has called the attention of the court to *People* v. *Space* (182 Misc. 783) in which the court took judicial notice of a village ordinance (Civ. Prac. Act, § 344-a, subd. A, par. 3). True, under this amendment of 1943, a trial or appellate court, in its discretion, may take judicial notice of " An ordinance, resolution, by-law, rule or proceeding of the appropriate governing body of any city * * *." Still, some ordinance must exist; a court surely cannot take judicial notice of a mere void.

Returning now to plaintiff's application for a new trial against defendant Renaud on the grounds of insufficiency of the verdict, the same must be denied. There was a pre-existing condition which was claimed to have been aggravated. The damages shown to have been caused in the collision now at issue are not so extensive as to require the court to interfere with the verdict of the jury.

Order accordingly.