Argued October 17, affirmed November 14, 1952

# NICHOLS *v.* UNION PACIFIC RAILROAD CO.

## 250 P. 2d 379

*Randall B. Kester,* of Portland, argued the cause for appellant. With him on the brief were Maguire, Shields, Morrison & Bailey, and Howard K. Beebe, of Portland.

*Thomas H. Tongue, III,* argued the cause for respondent. On the brief were Hicks, Davis & Tongue, of Portland.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE and TOOZE, Justices.

TOOZE, J.

This is an action brought by Luke Nichols, as plaintiff, against Union Pacific Railroad Company, a cor-

poration, as defendant, to recover damages for personal injuries and for the wrecking of an automobile, alleged to have been caused by defendant's negligence. The jury returned a verdict in favor of plaintiff in the sum of $25,000, for and on account of personal injuries, and in the further sum of $1,000, for and on account of the damages to the automobile. Judgment in plaintiff's favor was entered accordingly, and defendant appeals.

Defendant operates a railway system in the state of Oregon, a portion of which extends in a general easterly and westerly direction through the city of Hood River, in Hood River county. First street is a paved public thoroughfare of the city of Hood River, is 60 feet in width, and runs in a general northerly and southerly direction. At the scene of the accident hereinafter described, defendant's right of way is approximately 140 feet in width, north to south. The northerly terminus of the paved portion of First street is at the southerly line of defendant's right of way. Commencing at the northerly line of defendant's right of way and running in a general northerly direction, there is a graveled roadway, approximately 16 feet in width, leading to a mole located upon the southerly bank of the Columbia river. There are some manufacturing plants located upon the mole, and several people, including plaintiff, reside on or in house boats moored adjacent to the mole. The evidence does not disclose whether or not this roadway is a duly established public street or highway, but its does disclose that it is now, and for many years has been, used extensively for travel by vehicles and pedestrians proceeding across the railroad right of way to and from the northerly end of First street and to and from the mole. In his complaint plaintiff describes

this roadway as an extension of First street, and where it commences at the northerly line of defendant's right of way, it runs in line with a portion of First street. For a distance of approximately 100 feet from the railroad right of way to the ground level of the mole, the roadway runs downhill on a comparatively steep grade.

It is unnecessary for the purposes of this opinion for us to point out the location of buildings, trees, or other total or partial obstructions to view along the railroad to the east and west that might, at various points, totally or partially obstruct the view of a traveler who proceeds in a southerly direction on said roadway in his approach to the railroad tracks of defendant, as plaintiff was doing immediately prior to the accident involved in this case. We shall hereafter refer to the way across the railroad right of way

from First street to the roadway as the railroad crossing. Over this crossing, defendant maintains two lines of tracks, running easterly and westerly and situate about 12 feet apart, the southerly tracks being its main line of railroad, and the northerly tracks being a passing line.

On the southeasterly portion of defendant's right of way and southerly from the main line of railroad, there is installed the usual cross-buck railroad crossing sign. On the post bearing this cross-buck sign and in the space between the lower wings of the cross, there is installed what purports to be a highway stop sign bearing the letters and words ''R. R. STOP Crossing''. Below this latter sign and also affixed to the same post is an additional sign reading ''2 TRACKS''. On the northwesterly portion of the right of way, northerly from the passing track and in line with the westerly line of the roadway, signs identical with those just described are installed. The evidence discloses that these signs had been at the locations mentioned for a continuous period of time immediately prior to the accident of from 8 to 11 years. For a better understanding of the location and type of these signs, we have caused to be attached as a part of this opinion a reproduction of a photograph introduced in evidence and showing, in particular, the signs located on the northerly portion of the right of way.

Upon the conclusion of the trial and before the jury was instructed as to the law, defendant moved for a directed verdict in its favor and, after trial, moved for a judgment notwithstanding the verdict. Both motions were denied by the court, and on this appeal defendant assigns as error those rulings by the trial court. Ordinarily this would require of us a detailed statement and consideration of the facts,

viewed in a light most favorable to the plaintiff, but in this case such statement and consideration have been rendered unnecessary because, as shall later appear, the sole issue presented to this court for determination relates to but a single issue of fact. It follows, therefore, that a brief statement of the salient facts is all that is required.

There is no real dispute between the parties as to the nature and seriousness of the personal injuries suffered by plaintiff as the proximate result of the accident. Neither is there any conflict in the evidence as to the damages sustained to the plaintiff's automobile.

On February 9, 1949, at approximately the hour of 9:15 a.m., plaintiff drove his automobile in a southerly direction along said roadway from the mole toward the railroad crossing. There was snow on the ground, and on the roadway it had become packed and icy. Plaintiff's car was equipped with chains on the rear wheels. When plaintiff reached the foot of the grade, approximately 100 feet from the railroad crossing, he brought his car to a stop. At the time a freight train, consisting of a steam engine and 90 freight cars, was on the passing track and was headed in an easterly direction. The engine of that train was on the crossing, thereby blocking passage over the crossing by vehicular traffic proceeding northerly or southerly along First street and the roadway. The head brakeman of the freight train uncoupled the engine from the string of freight cars, and it was moved easterly over the crossing until its rear end was about 10 feet from the easterly side of the crossing, when it was brought to a stop. It immediately commenced taking water from a water pipe located east of the crossing. Clouds of steam were blown from this engine, thereby creating a foggy condition which obscured the view

to the east of one approaching the railroad crossing from the north. Immediately after he had uncoupled the engine and it had moved over the crossing, the head brakeman gave plaintiff a hand signal which plaintiff interpreted as a signal for him to proceed to and over the crossing. Thereupon, plaintiff started his car and proceeded uphill toward the railroad crossing at a speed of three to five miles per hour. He did not stop at any point before reaching the crossing. Plaintiff looked both to the east and west, giving particular attention to the west, because of the anticipated arrival of a regularly scheduled train, and to the freight engine to the east. As he was crossing the main-line track, his car was struck by a train coming from the east. This latter train consisted of an engine, 13 empty passenger cars, and a caboose, and was running "dead head" from The Dalles to Portland. Plaintiff's car was struck immediately behind the driver's seat and was thrown approximately 140 feet toward and against the front of the railroad depot located on the southerly side of the main line. The engineer on this train set the emergency brakes immediately prior to the collision, and, with the brakes so set, the train proceeded 280 feet before it was brought to a stop.

There was a sharp dispute in the testimony as to the speed of the train, and also as to whether or not any warnings, by bell or whistle, were given as it approached the crossing. Estimates by witnesses relative to the speed of the train ranged from 20 to 60 miles per hour. There also was a dispute in the testimony as to the speed at which plaintiff was traveling, estimates ranging from 3 miles to 20 miles per hour. But all that testimony was for the jury to weigh and pass upon.

From a factual standpoint, the only evidence ma-

terial to a decision on this appeal is that respecting the stop sign appearing on the post carrying the crossbuck railroad crossing sign, previously described.

In its brief filed in this court defendant makes the following statement:

"The appellant is limiting the issues presented by it on this appeal to those relating to the legal effect of the stop sign."

Although five separate assignments of error are set forth in its brief by defendant, yet all of them relate entirely to the issue as stated in the above quotation. We shall, therefore, confine our attention to that issue.

The defendant assigns as error the refusal of the trial court to give to the jury the following requested instruction:

"The statutes of this State provide as follows:

'The state highway commission with reference to state highways and local authorities with reference to highways under their jurisdiction are hereby authorized to designate particularly dangerous grade crossings of steam or interurban railways by highways and to erect signs thereat notifying drivers of vehicles upon any such highway to come to a complete stop before crossing such railway tracks, and whenever any such crossing is so designated and signposted it shall be unlawful for the driver of any vehicle to fail to stop within 50 feet but not less than 10 feet from such railway tracks before traversing such crossing.' (O.C.L.A. Sec. 115-349)"

Defendant also assigns as error the refusal of the trial court to give the following requested instruction to the jury:

"In addition to the requirements of the law which I have already mentioned to you, the evi-

dence in this case establishes that at the time of the accident in question there was a 'stop' sign notifying drivers of vehicles upon the roadway to come to a complete stop before crossing the railway tracks. Under the law of this State, when such a sign exists, it is unlawful for the driver of any vehicle to fail to stop within 50 feet but not less than 10 feet from such railway tracks before traversing such crossing. (O.C.L.A. Sec. 115-349). Plaintiff by his own testimony has admitted that he did not stop within 50 feet of the crossing, and such failure to stop on his part constituted negligence as a matter of law. If you find that such negligence on his part contributed in any degree to the happening of the accident, however slightly, then your verdict must be for the defendant."

Further error is assigned by reason of the giving of the following instruction by the trial court to the jury:

"* * * I further instruct you, however, that plaintiff was not required as a matter of law to stop in compliance with the stop sign erected at said crossing, but you may consider his failure to stop at said sign in the light of the circumstances— I will read that again: I further instruct you, however, that plaintiff was not required as a matter of law to stop in compliance with the stop sign erected at said crossing, but you may consider his failure to stop at such sign in the light of the circumstances and conditions attendant at the time and place of the accident in determining whether or not plaintiff was negligent in one or more of the particulars charged in defendant's answer; * * *."

To the giving of this instruction, defendant saved the following exception:

"In the same connection we except to the Court's instruction at a later point, which I believe was substantially Plaintiff's Requested Instruction No. 1, to the effect that the stop sign did not require

the plaintiff to stop but was merely one factor to be taken into consideration, it being our view that the stop sign did require the plaintiff to stop as a matter of law, both as a matter of statute and as a matter of common law negligence. I understand plaintiff's position to have been that there was no evidence here as to the authority for the establishment of the stop sign. It is our position that under the statutes of this state the existence of the sign raises a presumption that it was validly placed there, there being statutes providing for the establishment of such signs and statutes making it unlawful to place unauthorized signs and the presumption that official duty has been regularly performed. It is our position, therefore, that in the absence of any evidence as to the origin of the sign the fact that it is shown by the evidence to have been there for many years and was there at the time of the accident is sufficient to raise a presumption that the sign was validly placed there; and if plaintiff contends it was not validly placed there, the burden was on plaintiff to produce evidence to that effect. On that premise that the sign was validly placed there the statute would require the plaintiff to stop within a distance of 50 feet and not less than 10 feet from the crossing, which he admittedly failed to do.

"Apart from the statute with respect to stop signs, it is our position that regardless of the statutes and regardless of whether the sign was established pursuant to statute, that it was at least a de facto sign, and plaintiff in the exercise of reasonable care could not ignore the existence of the sign. A traveler on the highway may not speculate as to the lawful origin of signs that he sees, and it is our position that reasonable care required him to stop as a matter of law, regardless of whether the sign was properly placed there or not."

Section 115-349, OCLA, is fully set forth above in defendant's requested instruction.

Section 115-311, OCLA, provides:

"It shall be unlawful for the driver of any vehicle or for the motorman of any street car to disobey the instructions of any *official* traffic sign or signal placed in accordance with the provisions of this act, unless otherwise directed by a police officer." (Italics ours.)

Section 115-309, OCLA, in part provides:

"(a) The state highway commission is hereby authorized to classify, designate and mark both intrastate and interstate highways lying within the boundaries of this state and to provide a uniform system of marking and signing such highways under the jurisdiction of this state, and such system of marking and signing shall correlate with and so far as possible conform to the system adopted in other states.

"(b) * * * * *

"(c) The state highway commission is hereby authorized and directed, whenever the route of any state highway passes through the corporate limits of any incorporated city or town of this state, to select and designate the street or streets of such incorporated city or town over which the said state highway shall be routed, and to provide a uniform system of marking and signing such state highway route, and such system of marking and signing shall correlate with and, so far as possible, conform to the system adopted in other states."

Section 115-310, OCLA, as amended by § 2, ch 428, Oregon Laws 1941, provides:

"(a) Subject to such authority as may be vested in the state highway commission, local authorities in their respective jurisdictions shall cause appropriate signs to be erected and maintained designating business and residence districts and steam or interurban railway grade crossings and such other signs, markings and traffic control signals as may be deemed necessary to direct and regulate traffic

and to carry out the provisions of this act, and such additional signs as may be appropriate to give notice of local parking and other special regulations, and the erection and maintenance of such signs, markers and signals by the state highway commission or local authorities shall be deemed an administrative act to be performed under general authority by the said state highway commission or local authorities, and in the case of local authorities the erection and maintenance of such signs, markers and signals shall be performed by the agency of such authority charged with traffic engineering or traffic law enforcement.

"(b) *The state highway commission shall have general supervision with respect to the erection by local authorities of official traffic signs* and signals for the purpose of obtaining, so far as practicable, uniformity as to type and location of such official traffic signs and signals throughout the state, *and no local authority shall place or erect any traffic signs,* signals or markings *unless of a type conforming to specifications and at locations approved by the state highway commission.* The provisions of this subdivision shall not apply to cities of over 50,000 population." (Italics ours.)

It should be pointed out that Hood River is a city of less than 50,000 population and, therefore, is subject to the provisions of the foregoing statute.

Before discussing the applicability of the foregoing statutes to the issue now before us, we shall direct attention to the affirmative answer of defendant.

By its further and separate answer and affirmative defense to the causes of action set forth in plaintiff's complaint, defendant charges plaintiff with contributory negligence in certain respects as particularly alleged therein. The only portions of this affirmative defense that are material to a determination of the legal problem presented on this appeal are the allega-

tions contained in paragraphs II and III thereof. Defendant alleges:

## "II.

"During all of such times a private roadway extended across defendant's right of way within said City, crossing two of defendant's tracks, at grade, a short distance south of plaintiff's residence. During all of such times the plaintiff, and others, used such roadway in traveling across defendant's tracks and right of way.

## "III.

"During all of such times, defendant maintained a standard cross-buck crossing sign adjacent to the western side of said roadway and immediately north of such grade crossing. Said sign carried the words 'RAILROAD CROSSING'; and the post bearing such sign also carried a standard octagonal highway stop sign and, in addition, a sign reading '2 TRACKS'."

■ Defendant contends that, as a matter of law, plaintiff was guilty of negligence per se in failing to observe and obey the stop sign located at the railroad crossing. It is conceded that plaintiff did not stop his car within 50 feet but not less than 10 feet from the railway tracks before traversing such crossing. Defendant's contention is based upon the theory that, under the facts of this case, plaintiff was guilty of a violation of the provisions of § 115-349, OCLA, supra. Such violation of the statute, if there was a violation, would, of course, constitute negligence per se. Defendant's requested instructions which the trial court refused to give were based upon defendant's contention that the provisions of § 115-349, OCLA, supra, were applicable. The trial court was of the opinion that the statute did not apply and instructed the jury as noted above.

It is defendant's position that, from the proof of the existence of the particular sign involved, and of

the fact that it had been in that position for a long period of years, a presumption arose that it was an official stop sign and had been lawfully erected as required by statute, and that, in the absence of evidence to the contrary, this disputable presumption was sufficient to render the provisions of § 115-349, OCLA, supra, applicable. If defendant's contention is sound, then, of course, the trial court erred in instructing the jury as it did and in refusing to give to the jury the instructions requested by defendant that were based upon the statute.

In support of its contention, defendant invites our attention to certain disputable presumptions. In this connection, defendant also directs attention to the provisions of § 115-313, OCLA, which make it unlawful for any person to place or maintain or to display upon or in view of any street or highway any unofficial sign, signal or device which purports to be or is an imitation of or resembles an official traffic sign or signal, or which bears the words "Stop", "Go Slow", "Caution", "Danger", "Warning", or similar word, or words, or which attempts to direct the movement of traffic, or which hides from view or interferes with the effectiveness of any official traffic sign or signal, etc.

It will be recalled that the stop sign in question in this case is located upon defendant's right of way, and not upon any street or public highway. If it is not an official sign, then it would follow that defendant is guilty of a violation of the statute to which we have just referred.

The disputable presumptions upon which defendant relies are: (1) that a person is innocent of crime or wrong; and (2) that official duty has been regularly performed. § 2-407(1), (15), OCLA.

■ There is no evidence whatever in the record to show by whom or when the sign was erected on defendant's property. Had the evidence disclosed its erection by some officer of the city of Hood River or by some representative of the State Highway Commission, or its location upon a public thoroughfare, it might then be presumed that in the erection of the sign, official duty had been regularly performed. But certainly no presumption may be indulged in that this particular sign located upon private property had been placed there by some official of the city or state. The erection of such a sign upon private property, without the consent of the owner, would constitute a trespass.

This sign having been erected upon defendant's right of way and having remained there for many years, it follows that actual knowledge as to when and by whom it was erected, and all the circumstances of its erection, must have rested with defendant. It is significant that defendant offered no evidence whatever relating to these matters, except as to the length of time the sign had been in existence. Instead of offering evidence as to the facts connected with the installation of the sign—evidence peculiarly within its own knowledge and power to produce—defendant places its sole reliance upon a disputable presumption.

■ We shall now direct our attention to the question of pleading. The affirmative defense of contributory negligence must be pleaded, and in that connection it is necessary to allege specific acts of negligence. *Waller v. Hill,* 183 Or 53, 56, 190 P2d 147; *Carstens Co. v. S. P. Co.,* 134 Or 53, 61, 292 P 89; 65 CJS, Negligence, 923, § 198b.

■ To warrant the trial court in instructing upon the provisions of § 115-349, OCLA, the allegations of defendant's affirmative answer must be sufficient for

the purpose. It is elementary that, if one relies upon a statute for a defense, his pleading must contain a statement of the facts that will bring the case clearly within the terms of the statute. The rule is well stated in 59 CJ, Statutes, 1199, § 739b, as follows:

"Where a public statute is applicable to a case, it is sufficient that the pleading of the party who seeks to rely upon the statute shall set forth the facts which bring the case within it; and it is not necessary to recite the title of the act or its number or date of passage, or otherwise designate, or even refer to it. *It is, however, indispensable that the pleading should state facts which show a cause of action or defense under the statute in order to invoke the benefit thereof.*" (Italics ours.)

Also see *Moore v. Fowler,* 58 Or 292, 296, 114 P 472; *Belzung v. Owl Taxi,* 70 SW2d 288, 290; 41 Am Jur, Pleading, 355, § 92.

The only allegation in defendant's answer that could possibly have any bearing upon the question now under consideration is that found in paragraph III of the affirmative defense and quoted above; viz., "and the post bearing such sign *also carried a standard octagonal highway stop sign.*" Is that sufficient to charge that the sign was an official sign erected pursuant to statute and requiring all persons approaching the railroad crossing to stop? The presence of this sign at the point in question was a material factor, along with the other facts and circumstances of the case, for consideration by the jury in determining whether plaintiff was guilty of common-law negligence as a matter of fact because of his failure to stop. Being material in that connection, it was a proper pleading and not subject to either demurrer or motion to strike. But we are not now concerned with the question of plaintiff's negligence as one of fact. We are concerned

only with the question whether his failure to stop constituted a violation of the statute and was, therefore, negligence per se. Under this pleading, could the question of a violation of the provisions of § 115-349, OCLA, by the plaintiff, be properly submitted to the jury? In other words, has defendant pleaded enough to bring its defense within the statute?

 Under this statute, several things must concur and combine before its prohibitions become effective: (1) it is necessary that a highway under the jurisdiction of the State Highway Commission, or local authorities, be involved; (2) the railroad crossing must have been designated as a particularly dangerous grade crossing by either the State Highway Commission, or by the local authorities; and (3) pursuant to such action, signs must be erected at the crossing (and this means upon the public highway) notifying drivers of vehicles upon the highway to come to a complete stop before crossing the railway tracks. The statute specifically provides that *whenever* such a crossing has been so *designated* and so *signposted*, then, and not until then, does the prohibition of the statute apply. In order to make this statute applicable as a defense in this case, it was necessary for defendant to plead that this railroad crossing had been designated by proper authorities as a dangerous crossing, and that official signs had been legally installed. These requirements are not met by the simple allegation that on defendant's right of way a post carried "a standard octagonal *highway* stop sign." The most that can be claimed for this allegation is that it charges the existence of an official *highway* stop sign on defendant's right of way at the crossing, such a stop sign as is posted on public highways at the entrances to established through thoroughfares. It is a matter of common knowledge, as well

as of departmental regulation, of which this court takes judicial notice, that official *"highway* stop signs" are not the same as official *"railroad crossing* stop signs". But even assuming that the allegation is sufficient to charge that this railroad crossing had been signposted as mentioned in the statute, nevertheless, the answer omits the most important factor in making the statute applicable; that is, an allegation that the crossing had been properly designated as a dangerous crossing. That is the very gist of the statute. It is our opinion that the pleading is insufficient to sustain a defense based on § 115-349, OCLA.

It follows, therefore, that the trial court did not err in refusing to give the requested instructions based upon the statute, nor did it err in giving the instruction which it did give to the jury.

■ The question of plaintiff's alleged contributory negligence as a proximate cause, or proximate contributing cause, of the accident was, under all the facts and circumstances of this case, properly submitted to the jury as a question of fact. By its verdict, the jury decided that question adversely to defendant.

The judgment is affirmed.