Argued October 19, affirmed December 8, 1954

## SCHOENBORN *v.* BRODERICK ET AL.
277 P2d 787

*James O. Goodwin,* Oregon City, argued the cause for appellants. With him on the brief were Glenn R. Jack, Oregon City, and Arthur C. Bull, Portland.

*Dale Jacobs* argued the cause for respondent. On the brief were Uney & Jacobs, Oregon City.

Before WARNER, Acting Chief Justice, and ROSSMAN, BRAND and PERRY, Justices.

ROSSMAN, J.

This is an appeal by the defendants, three in number, from a judgment of the circuit court which is based upon a verdict. The action, which terminated in the entry of the challenged judgment, stemmed from a collision which occurred May 20, 1952, at about 8:00 a. m. between an automobile which the plaintiff was operating east on Molalla Forest Road and a car which the defendant, Georgia Broderick, was driving north on Steininger Road. The cars collided in the intersection of those two thoroughfares, which is in Clackamas County. Molalla Forest Road is privately owned and maintained. The other is a public thoroughfare. The defendants admit that they are partners, that the car which defendant Georgia Broderick was driving was owned by the partnership and that she was engaged upon partnership business.

In the collision of the two cars both drivers and their vehicles sustained injuries. The complaint prayed for the recovery of the plaintiff's damages, and the answer counterclaimed for the injuries suffered by the defendant Georgia Broderick.

An electrically operated traffic control device was installed in the aforementioned intersection in 1947 and was in operation at the time of the mishap. The complaint described the device as "a lawfully installed signal light." The answer denied that averment, and, referring to it, said: "Some person or persons unknown to the defendants had installed lights on the private road known and designated as the Molalla Forest Road."

The complaint made many charges of negligence against the defendants, but the only one which needs our attention is the following: "The defendants and each of them failed to heed and abide by the traffic signal light, which required them to stop at the intersection at said time and place."

The answer averred:

"(4) That said plaintiff traveling upon a private roadway failed to stop and yield the right of way to the defendant at said time and place travelling on a public thoroughfare.

"(5) That said plaintiff was operating said automobile at such a speed that he was unable to stop or swerve said automobile to avoid colliding with the defendant's automobile at said time lawfully using said public thoroughfare."

The defendants-appellants present these two assignment of error:

"The Court erred in denying the Motion for Judgment Non Obstante Veredicto, or in lieu thereof an Order granting a new trial."

"The Court erred in submitting to the jury respondent's specification of negligence with regard to the claimed duty on the part of appellants, who travelled the public highway, to heed privately installed traffic lights upon a public highway, in favor of a vehicle travelling upon the private road."

The brief of the defendants-appellants states:

"* * * The crucial question of this appeal is whether or not, before entering the public highway, plaintiff-respondent, who was operating his vehicle upon the private road, was required to stop and yield the right of way to the operator of the defendant-respondents' vehicle, which was travelling upon the public highway."

Evidently, through inadvertence, the appellants wrote "defendant-respondents" when they meant "defendants-appellants". Again, their brief says: "The principal controversy concerns which of the parties was under a duty to stop and yield the right of way." We think that the issue which is submitted by the appeal can be further clarified by stating it in these words: Was the traffic control device a lawful one? If it was, the defendant Georgia Broderick was required to comply with its signals and, in that event, the assignment of error is without merit.

Molalla Forest Road is owned by Crown Zellerbach Corporation and Weyerhaeuser Timber Company. It is used largely by motor logging trucks. The traffic control device which we have mentioned, and which was installed in 1947, is so constructed that a red light faces a motorist who approaches the intersection upon Molalla Forest Road from either the east or the west until he reaches a point 300 feet from the intersection. When a red light faces cars moving along the private road, a green light favors those upon the county thoroughfare. When a car traveling along the private way has reached a point within 300 feet of the intersection it passes over a rod, known as a detector, which is embedded in the pavement and thereupon the light is projected into a cycle. First, the red light changes into amber for five seconds, then into green for eleven or twelve seconds, next into amber for five seconds

and finally, at the end of that interval, it returns to red. The cycle has thus been completed. A corresponding cycle occurs in the light facing north and south along Steininger Road. The length of the cycle is sufficient to permit a car traveling at a speed of twenty miles per hour upon the private road to pass safely through the intersection.

According to evidence which the jury had a right to believe, the plaintiff approached the intersection from the west May 20, 1952, at 8:00 a. m. about 50 feet to the rear of a logging truck. When he was about 100 feet from the intersection he observed to his right, so he swore, a car proceeding north along Steininger Road which, it developed, was being driven by the defendant Georgia Broderick. He estimated that his car and the defendant's were proceeding at about 25 to 30 miles per hour. When the truck which the plaintiff was following passed over the detector, the red light, according to the plaintiff's account, turned into amber and next into green. The plaintiff testified that he followed the truck into the intersection and that the light was still green when he did so. He also testified that he had assumed that the car to his right would stop upon reaching the intersection.

The answer says:

" * * * That as said defendant entered said intersection, the light turned to amber, and defendant was at that time too near said intersection to stop and proceeded across the same * * *."

The defendants-appellants' brief contains this statement: "Neither vehicle stopped before entering the intersection." Thus, it is conceded by the defendants that the driver of their car did not stop before entering the intersection. The plaintiff, as we have seen,

swore that a green light favored him as he proceeded into the intersection. If he told the truth, a red light faced traffic upon Steininger Road.

The plaintiff said that when he noticed that the defendants' car did not intend to stop, he swerved to his left, but that his efforts were in vain and the collision occurred.

The defendants depend upon ORS 483.206, which provides:

> "The driver of a vehicle entering a public highway from a private road or drive shall stop and yield the right of way to all vehicles approaching on such public highway, except where traffic control signals or other traffic control devices required and installed by the commission, or pursuant to the order of the Public Utilities Commissioner, indicate that the driver may proceed without stopping."

The word "commission" where it appears in the quoted language means the State Highway Commission (ORS 483.006(3)).

The defendants deny that the control signal which we have mentioned was required or installed by either the State Highway Commission or the Public Utilities Commissioner. They, therefore, argue that a disregard of the signal, if it occurred, was not negligence per se.

From the foregoing, we abserve that the defendants concede that before the collision occurred the control device had been installed and that at the time of the mishap it was in operation. They also concede that their car did not stop before it entered the intersection. The issue concerning the color of the light which faced the respective motorists, and the plaintiff's speed, were for the jury and do not concern us.

ORS 483.044 says:

"(1) Subject to the authority vested in the State Highway Commission, local authorities in their respective jurisdictions shall erect and maintain appropriate signs designating business and residence districts, and steam or interurban railway grade crossings; such other signs, markings and traffic control signals as are deemed necessary to direct and regulate traffic and to carry out the provisions of this chapter; and such additional signs as may be appropriate to give notice of local parking and other special regulations.

"(2) The erection and maintenance of such signs, markers and signals by the commission or local authorities shall be deemed an administrative act to be performed under general authority by the commission or local authorities.   *   *   * "

ORS 483.012 says the term " 'Local authorities' means every county, municipal and other local board or body having authority to adopt local police regulations under the Constitution and laws of this state." County boards possess power of the kind mentioned in the quoted language: ORS 483.042 and 483.532.

ORS 483.130 renders it the duty of users of the thoroughfares to comply with signals given by traffic control devices of the kind which was in operation at the intersection of Steininger and Molalla Forest Road; assuming, of course, that the device was lawfully installed.

ORS 483.138 says:

"(1) No person shall place, maintain or display upon or in view of any street or highway, any unofficial sign, signal or device which purports to be or is an imitation of or resembles an official traffic sign or signal, or which bears the words 'Stop,' 'Go Slow,' 'Caution,' 'Danger,' 'Warning' or similar words, or which attempts to direct the

movement of traffic, or which hides from view or interferes with the effectiveness of any official traffic sign or signal.

\* \* \* \* \*

"(4) Every prohibited sign, signal or device is hereby declared to be a public nuisance, and the authority having jurisdiction over the highway may remove it, or cause it to be removed, without notice."

We shall now mention the evidence which accounts for the installation of the traffic control device.

Molalla Forest Road was built in 1942 and crosses 13 county roads. E. L. Pope, county judge of Clackamas County, testified that May 28, 1947, he wrote a letter to the logging manager of Crown Zellerbach Corporation which requested that concern and its co-owner of the road, Weyerhaeuser Timber Company, to install as a safety measure traffic signal lights at the road's intersections. According to him, the two commissioners of the county, who, together with the county judge, constitute the county court, joined with him in signing the letter. After the letter was written the traffic signals were installed, so the witness declared.

R. P. Betzer, chief electrician for the State Highway Commission, described the duties of his office as "traffic signals and drawbridges and outside lighting and all kinds of electric wiring." A crew of five men work under him. He testified that the traffic control device in the intersection of Steininger and Molalla Forest Road was installed in 1947 and that "I hooked them up and set the timing on them." He added that he performed that function in the discharge of his official duties. His testimony indicates that traffic control instruments were installed in all of the other 12 intersections simultaneously with the one

in the Steininger-Molalla Forest Road intersection. According to him, the work was done by a private contractor. However, the witness testified that he made tests of the work and, as we have seen by quoting his words, he "hooked them up and set the timing". We again resort to his actual words:

"Q And would it be your testimony that it was under your supervision?

"A Well, yes."

Referring to the traffic control device in the intersection where the collision occurred, the witness swore that "it was operating satisfactorily." Upon cross-examination, the following testimony was given:

"Q The light in this particular intersection sometimes doesn't work at all, does it?

"A Not to my knowledge.

"Q You have never been out there except when you were out there in the beginning and rewired it? Is that it?

"A I am out there quite often, but there are a few of those lights on the upper end that don't seem to give us much trouble."

Jack H. Kenney, who described himself as a deputy sheriff entrusted with the "traffic safety supervision" of Molalla Forest Road, stated that he was in the employ of the owners of the road, Crown Zellerbach Corporation and Weyerhaeuser Timber Company. His testimony indicates that he traveled daily upon the road and was intimately familiar with the traffic control devices.

The above is a narrative of all the evidence which accounts for the installation of the traffic control devices. The defendants presented no evidence whatever upon the subject and there is nothing contrary to any of the foregoing.

We see from the evidence that traffic control devices similar to the one in the intersection where the collision occurred were installed in the 12 other intersections at the same time it was put in place, that is, in 1947. All of the 13 devices have been in operation ever since and have been visited "quite often" by the official of the State Highway Commission who is charged with the responsibility of supervising such utensils. From the evidence, the jury could reasonably have inferred, and presumably did, that the county court of Clackamas County concluded prior to 1947 that the devices were essential as safety measures and that, as a result of its action, the owners of the private road installed them. We have seen that the aforementioned official of the State Highway Commission supervised the installation of the devices and that, as a part of his duites, he not only timed and tested them, but inspected them "quite often."

Both the plaintiff and the defendant Georgia Broderick were intimately familiar with the traffic control device which we have described. The plaintiff's property faced upon the Molalla Forest Road and he had used the road ever since it was built. The defendant Georgia Broderick, during the five years preceding the collision, lived in the neighborhood of the intersection with which this case is concerned and drove through it daily six to eight times. She swore that as her car approached the intersection upon the ill-fated morning she had her eyes upon the light.

We now face the problem of determining from the facts and statutes previously mentioned whether the traffic control device in question was a lawful one which ORS 483.130 required travelers upon Steininger Road to obey, or whether it was an unlawful one which ORS 483.138 condemns as "a public nuisance."

Analogous problems have received the attention of other courts. From *King v. Gold,* 224 Iowa 890, 276 NW 774, we quote:

"There is an intimation in plaintiff's argument that there is no proof that the stop sign was placed there by proper authority. There is no merit in this contention for the reason that a traveler must have the right to assume that highway signs having the appearance of regularity are placed by proper authority."

The following is taken from *Trimble v. Bridges,* 27 Tenn App 320, 180 SW2d 590:

"It seems to be the plaintiff's contention that because the city had not by ordinance expressly provided that a 'stop-sign' should be placed at the intersection of Poplar and McComb Streets, he was not required to obey the one that was there. This position is untenable. Code, Section 2689, provides in substance that the state authorities, with reference to state highways, and local authorities with reference to highways under their jurisdiction, are authorized to designate main traveled or through highways by erecting at the entrances thereto from intersecting highways, signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highway; and that whenever such signs have been so erected, it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto.

"There is no direct evidence in the record as to just who placed the sign at the point mentioned, but it was shown that it had been there for at least four years, and in the absence of any evidence to the contrary it must be presumed that it was placed there by competent officials in the exercise of the authority conferred by Code, section 2689."

*Kingston v. Hardt,* 18 Cal App2d 61, 62 P2d 1376, holds:

"Nothing to the contrary appearing, it must be assumed that the safety island and the safety

zone were legally constructed under a legal authority conferred upon the board of works and its agents.''

*Cook v. Hunter,* 52 Ohio App 354, 3 NE2d 680, was concerned with an issue as to the legality of a traffic signal device. The main opinion states:

"* * * The warning effect of the traffic signal erected at the intersection of the roads where the collision occurred, which gives rise to the instant action, was in no way lessened or increased by the obtaining or failing to obtain the consent and approval of the highway director to erect and maintain the same.''

A specially concurring opinion reasons:

"Under such allegations in the answer, and in the absence of any evidence on the subject, I believe it must be assumed that the traffic light was legally erected; * * *.''

The New York courts have faced this problem several times. In *Meadows v. Lewis,* 235 App Div 243, 257 NYS 137, the plaintiff, who was injured in a collision of two automobiles, charged that the defendant failed to obey a stop sign. The defendant challenged the legality of the sign and requested the trial judge to charge the jury: "There is no evidence of any lawful traffic regulations * * * because there is no proof that there was anything displayed within any provision of law.'' A statute read:

"The superintendent of public works may in his discretion erect and maintain on any or all roads or highways, outside of cities and villages, which intersect a state or county highway, suitable signs or signals warning drivers of vehicles to bring such vehicles to a full stop before entering or crossing such state or county highway.''

Another read as follows:

"It shall be unlawful for any person to place or maintain or to display upon or in view of any highway any unofficial sign, signal or device which purports to be or is an imitation of or resembles an official traffic sign or signal or which attempts to regulate the movement of traffic."

The court held:

"The testimony shows that the sign in question had the appearance of the usual lawfully erected and maintained traffic signal and was erected at a place in respect to the intersection where a lawful sign would be customarily placed. It was white and bore the word 'stop' in glass. It was octagonal in shape, and about 2 feet wide, with white background and black edge. When the lights of an automobile shone upon it, the word 'stop' lighted up. The testimony shows that the sign was located about 75 feet from the intersection, and that the plaintiff saw it when the car in which she was riding was about 50 feet from it. We think this testimony was a sufficient showing of the validity and authority of the sign, its construction and location under the statute. Such testimony forms an adequate basis for the presumption that the sign was suitably constructed, erected and maintained, and for the further presumption that it was not constructed, erected, and maintained in violation of the provisions of the Vehicle and Traffic Law, § 88, subd. 9, above quoted.  *  *  *

"  *  *  *  In this view plaintiff made a prima facie showing of a lawful traffic regulation displayed in the highway (Vehicle and Traffic Law, § 88, subd. 6, as amended by Laws 1930, c. 756, § 3), and it then became incumbent upon defendant to present facts to the contrary if it would have the question submitted to the jury."

In *Manard v. Sheppard,* 243 App Div 265, 276 NYS 494, the collision which yielded the decision occurred

at an intersection in the city of Buffalo while the plaintiff was endeavoring to cross Smith street. A city ordinance required travelers to come to a full stop before crossing that street, which was protected with stop signs. The trial judge, believing that the city ordinance had the effect of a statute, charged the jury that if the plaintiff failed to stop before he crossed Smith street he was guilty of negligence. In New York violation of a statute is negligence per se, but the violation of an ordinance is merely evidence of negligence. The verdict of the jury was against the plaintiff and he appealed. In affirming the challenged judgment, the court ruled that the charge was "technically incorrect" but "not unfair to plaintiff" because a statute read as follows: "No person shall fail, neglect or refuse to comply with * * * any lawful traffic regulations displayed in any highway." The court believed that the quoted words were applicable to signs erected by either the city or the state.

*Bailey v. Herrmann,* 253 App Div 125, 1 NYS2d 404, was concerned with a stop sign which stood in a thoroughfare known as Tait Avenue in the town of Greece at a point immediately before a traveler on Tait reached Britton Road. A collision occurred in the intersection and the plaintiff recovered a judgment. Evidently the defendant traveling on Tait had disregarded the stop sign. According to the decision: "The court charged the jury in effect that Britton road was a county road and that the county superintendent of highways had authority to erect the 'Stop' sign on Tait avenue". After that charge had been made, the instruction read to the jury the provisions of a New York statute which required a person approaching an intersection "with a county road where there is a 'Stop' sign to come to a full stop before enter-

ing upon the county road''. Upon appeal the defendant-appellant called attention to evidence which indicated that Britton road was a town road. The difficulty thereby presented was resolved by the decision in this way: ''The town had the right to erect a 'Stop' sign on a town highway.'' After citing the pertinent statute, the decision continued:

''It will be presumed that the 'Stop' sign was lawfully erected and maintained. Meadows v. Lewis, 235 App. Div. 243, 257 N.Y.S. 137. There is a statute requiring that a person shall not fail, neglect, or refuse to comply with a lawful traffic regulation posted on a sign in a highway.''

Thus, it is seen that the presumption that the sign was lawfully erected and maintained settled the issue, regardless of whether the county superintendent of highways or the town officials installed the sign. The challenged judgment was affirmed.

*City of Rochester v. Tutty,* 169 Misc 358, 6 NYS2c 975, arose out of a charge of overparking which was made against the defendant. The applicable ordinance read: ''The driver of a vehicle shall not park such vehicle * * * in any street for a period longer than designated by the Commissioner of Public Safety.'' In affirming the challenged judgment, the court said:

''It has been held that 'Stop' signs erected at intersections are presumed to be lawfully maintained. Bailey v. Herrmann, 253 App. Div. 125, 1 N.Y.S.2d 404. The same presumption should apply to parking signs erected along public streets.''

*Armstrong v. Koller,* 261 App Div 1017, 25 NYS2d 984, arose out of a collision which occurred at the intersection of two highways known as 40 and 67. When the defendant-appellant's car entered the intersection upon 67 a stop sign was to its right, which it

disregarded. In affirming the challenged judgment, the decision said:

"* * * The court charged the jury that because of the stop sign it was the defendant's duty to stop before attempting to cross the intersection. There was testimony to indicate that the sign had been erected and was maintained under the authority of the State, and its appearance and location created the presumption that it was lawfully there."

*Epolito v. Epolito*, 189 Misc 424, 71 NYS2d 611, had its basis in a collision between two vehicles which occurred in the city of Syracuse where two streets known as Park and Kirkpatrick intersect. A stop sign stood in Kirkpatrick Street at the northeast corner of the intersection. Upon appeal, the plaintiff predicated error upon the trial judge's refusal to submit to the jury the application of the sign. A New York statute provided:

"No person shall fail, neglect or refuse to comply with * * * any lawful traffic regulations displayed in any highway."

The plaintiff contended that the sign was a lawful one. Another section said:

"The legislative body of a city * * * may by ordinance designate certain public highways or parts of highways, respectively, in such city * * * as main arteries of travel and require that all vehicles * * * approaching a main artery of travel on any public highway designated by ordinance shall, before entering the same come to a full stop * * *."

This section of the statute also contained this provision:

"Signs bearing the word 'stop' shall be erected and maintained at or near the intersecting line of such main arteries of travel on all public highways

designated by ordinance on which vehicles shall, before entering such main artery of travel come to a full stop.''

During the trial the presiding judge directed attention to the fact that no ordinance had been offered designating Park Street as ''a main artery of travel'', and afforded the plaintiff opportunity to present the ordinance. Before the submission of the case to the jury, plaintiff's counsel stated that he had found no ordinance which designated Park as a main artery although the stop sign had stood in Kirkpatrick for four years. The decision of the appellate court affirmed the trial court and held that the absence of the pertinent ordinance was fatal to the plaintiff's contentions. In reaching its conclusion, the appellate court took note of the decisions (New York) which we have reviewed. It distinguished *Bailey v. Herrmann* on the ground that the town was not required by any statute to adopt an ordinance before erecting the stop sign which was a feature of that case. It distinguished *Meadows v. Lewis* by calling attention to the fact that a state statute conferred upon the superintendents of county highways discretionary power to erect and maintain stop signs. *Manard v. Sheppard* was distinguished by taking note of the fact that in that case the ordinance essential to the validity of the stop sign had been enacted. In dealing with *City of Rochester v. Tutty,* the court observed that that decision relied upon *Bailey v. Herrman* and its statement, ''It has been held that 'Stop' signs erected at intersections are presumed to be lawfully maintained''; it pointed out that in the Bailey case the town ''as a matter of right'' had the authority to erect signs. As we have indicated, the Epolito decision held that before the city could convert a street

into an arterial way and guard it with stop signs it must first enact the required city ordinance. The decision said nothing about presumptions. Possibly its silence upon that subject was due to the fact that plaintiff's counsel, after having been invited by the trial judge to present the required ordinance, announced inability to do so.

*Tyson v. Shoemaker,* 208 Ga 28, 65 SE2d 163, was somewhat similar in its facts to *Epolito v. Epolito,* supra, and reached in part the same result. The casualty occurred at the intersection of North Broad Street and Highway 38 in the city of Cairo, Georgia. A stop sign, which stood in the southeast corner of the intersection, faced the plaintiff as he approached the intersection. He, however, did not stop, and the defendant depended upon that fact. A state statute authorized the mayor and councilmen of the city of Cairo to make provision for the erection of stop signs. The answer alleged that the State Department of Public Safety in conjunction with the State Highway Department had designated highway 38 as a through highway and that pursuant thereto the state highway maintenance department had erected the sign. Upon the trial those contentions were abandoned. According to the decision of the case in the Georgia Court of Appeals (83 Ga App 33, 62 SE2d 586), the defendant, after abandoning the contentions just mentioned, "unsuccessfully sought to show that the sign had been erected under the directions of the Chairman of the Street Committee of the City Counsel [sic]". Going on, the decision said: "In the present case there was no showing that the stop sign was official". The decision of the Court of Appeals held that the plaintiff's disregard of the sign did not even constitute common

law negligence. The decision of the Supreme Court ruled:

"The defendant sought to allege and prove the existence of a stop sign at the intersection of highway 38, and that it was put there in 1934 by the Street Superintendent of the City of Cairo on orders of the Chairman of the Street Committee of the Mayor and Council. Such allegations and proof, if made, would not establish the sign as one having been duly authorized by law, and the failure of the plaintiff to heed the sign would not constitute negligence per se. However, it was a question of fact for the determination of the jury whether the plaintiff exercised ordinary care for his own safety and the safety of others in failing to observe and obey the unofficial stop sign."

It will be observed that the defendant's own pleading and evidence showed that the sign was unlawfully erected. Accordingly, there was no room for a presumption in favor of the sign. In that respect the case was somewhat similar to *Epolito v. Epolito.*

We now take note of two of our previous decisions. *Frame v. Arrow Towing Service,* 155 Or 522, 64 P2d 1312, after quoting a statute which required wrecker and towcars, upon obstructing a roadway, to "place at a suitable distance in each direction upon such roadway suitable signs or signals warning the drivers of oncoming vehicles", proceeded as follows:

"Failure to comply with the above statute constitutes negligence per se, as the trial court properly instructed the jury. It is urged by defendant appellant that, since the state highway commission has not approved any signs or signals to be used by tow car operators when engaged in salvaging a wrecked or disabled car, no negligence can be charged against it for failure to put out any suitable sign or signal. We have searched the record in vain for evidence to substantiate such contention

and can find none. In the absence of evidence that the state highway commission has not determined what constitutes a proper or suitable sign or signal for such purposes, the presumption of compliance with the statute will suffice.''

*Nichols v. Union Pacific R. R. Co.*, 196 Or 488, 250 P2d 379, submitted the issue as to whether or not it could be presumed that a stop sign which stood upon the defendant's property in the city of Hood River was placed there by either the State Highway Commission or the city of Hood River. We quote from the decision the following:

" \* \* \* Had the evidence disclosed its erection by some officer of the city of Hood River or by some representative of the State Highway Commission, or its location upon a public thoroughfare, it might then be presumed that in the erection of the sign, official duty had been regularly performed.''

■ The aforementioned decisions indicate that traffic markers, safety islands, parking signs and signaling devices which have been installed in the public thoroughfares, and which appear to be legal, are presumed to have been lawfully erected, in the absence of evidence which renders the presumption inappropriate. The aforementioned decisions also show that a party, otherwise favored by the presumption, may bar himself from it by showing that those who erected the contested sign or instrument had no lawful right to do so.

The traffic regulating device with which this case is concerned was in a suitable place in a public thoroughfare. It appeared to be lawful and even the defendant Georgia Broderick, who drove through the intersection many times daily, looked up to the light for driving directions before entering. The device had been in the intersection for six years. The official

of the State Highway Commission who was entrusted by that body with the supervision of that kind of equipment had helped to install it and had visited it many times. The county court of Clackamas County had prompted the installation of the device and, according to its chairman, was aware of the fact that, as a result of its action, the device was placed there.

We have seen that legislation has been enacted whereby such devices could be lawfully installed: ORS 483.044. ORS 483.138 deems as public nuisances unauthorized devices in the public thoroughfares and directs their destruction.

A previous paragraph takes note of ORS 483.044 (2), which regards erection and maintenance of devices of the kind with which this case is concerned "an administrative act to be performed under general authority by the commission or local authorities". Accordingly, it is not essential to the legality of traffic regulating appliances that an individual entry appear in the county court's journal pertaining to a specific device and ordering its installation. Journal entries are essential, but since erection and maintenance are deemed "administrative" and are "to be performed under general authority", the entry may consist of a general order pertaining to many devices and prescribing the needed rules. The legislation of which we have taken notice possibly was prompted by knowledge that the protection of the public by the placement of protective devices cannot always wait until the public body convenes and adopts formal resolutions.

■ ORS 41.360, which enumerates many disputable presumptions, includes among them these: "(15) Official duty has been regularly performed. * * * (34) The law has been obeyed." Accordingly, when nothing more is known about a traffic regulating device than

appears in the foregoing paragraphs, a court is required to presume that the law was obeyed in its installation. In fact, the foregoing quoted presumptions require the court further to presume that the instrument cannot be an unlawful one, for if it were the public officials would have complied with the demands of ORS 483.138 and would have removed it from the public highway.

We are satisfied that the plaintiff was favored with a presumption that the traffic control device with which this case is concerned was a lawful one, lawfully installed and maintained. There is nothing in the record indicating that the device was unlawfully erected. The mere fact, if it is a fact, that the owners of the private road paid for the installation of the device has no tendency to show that it was unlawfully installed. If a person who is interested in the extension of a public highway is prompted to pay for a bridge which will enable the highway to cross a waterway, the legality of the bridge is in no way adversely affected. Likewise, the fact that a private contractor performed the work would not deny validity to the device, for virtually all of our highways are constructed by private contractors. As we have seen, the evidence indicates that the installation of the aforementioned traffic regulating device was under the direct supervision of the official of the State Highway Commission who was entrusted by his superiors with the responsibility of installing such devices. It is our conclusion that the law presumes that the device was a lawful one.

Without resort to further analysis, we express our belief that the appellants' two assignments of error are lacking in merit.

The judgment of the circuit court is affirmed.