Argued November 2, reversed and remanded
December 30, 1971

HENDERSON, *Respondent, v.* C-K, INC. ᴇᴛ ᴀʟ,
*Appellants.*
492 P2d 266

*H. F. Smith,* Klamath Falls, argued the cause and filed briefs for appellants.

*Gerald R. Pullen,* Portland, argued the cause for respondent. With him on the brief was David R. Vandenberg, Jr., Klamath Falls.

McALLISTER, J.

This is an appeal from a judgment entered on a verdict for plaintiff, who sustained personal injuries in a collision with a loaded log truck owned by defendant C-K, Inc., and driven by defendant Alonzo Smith. Plaintiff, an employee of Weyerhaeuser Company, was operating a vehicle known as a "speeder" on a railroad track owned by Weyerhaeuser. The speeder and the truck collided at the intersection of Weyerhaeuser's track with Silver Lake Road, a public road in Klamath County. The speeder, a self-propelled vehicle which operates on railroad tracks, was used by Weyerhaeuser to transport men and materials between its work camp and its timber area work sites. Plaintiff was transporting a number of Weyerhaeuser employees at the time of the accident.

Plaintiff contended that defendant Smith was negligent in his operation of the log truck, and defendants charged plaintiff with contributory negligence. On appeal, defendants contend that there were errors in submitting the case to the jury.

The trial court instructed the jury in accordance with plaintiff's theory that the speeder, as a "railroad vehicle," had the right of way at the intersection. Defendants contend that the general rule, which accords to railroads the right of precedence at intersections with public roads, does not apply to the operation of a private vehicle on a private logging railroad.

The general rule that the train has the right of way has been recognized and applied in a number of Oregon cases, always involving the operation of a common carrier railway. Apparently the first such case was *Kunz v. Oregon Railroad & N. Co.*, 51 Or 191, 93 P 141, 94 P 504 (1908), in which the following explanation of the rule was given:

"A traveler on a public road that intersects a railway at grade, is entitled to use the crossing; but as passengers and freight, when transported by rail, must be carried with speed, a locomotive and the cars which it draws have the right of way to which a person, desiring to cross the track, and having reasonable notice of the near approach of a train, must yield on the ground that in doing so the greatest good will result to the greatest number: * * *. If a contrary rule prevailed, the operation of trains would be practically prevented across streets at grade in cities where many persons are constantly passing." 51 Or at 202.

Similar reasons for according the right of way to the railroad were mentioned in *Olds v. Hines,* 95 Or 580, 590, 187 P 586, 188 P 716 (1920):

"* * * For the reason that the train has the

right of way and must have it in order properly to conserve the safety and convenience of the traveling public, the truck driver has no right to claim priority of passage. \* \* \*"

and again in *Schukart v. Gerousbeck,* 194 Or 320, 333, 241 P2d 882 (1952):

"The interest of the public in the continuous, uninterrupted, and unobstructed operation of a railroad is at least equal, if not paramount, to its interest in highway use. Public policy has always demanded, and now does demand, that a railroad company be permitted to carry on its functions as a common carrier without unreasonable and unnecessary interference which will slow up, interrupt, or obstruct traffic."

Plaintiff argues that the reason for the rule giving trains the right of way is not the expedition of public railway traffic, but, rather, the relative difficulty in stopping and maneuvering a train or other rail-traveling vehicle. Such considerations have been mentioned in a number of our cases: *Layne v. Portland Traction Co.,* 212 Or 658, 670, 319 P2d 884, 321 P2d 312 (1958); *Fish v. Southern Pacific Co.,* 173 Or 294, 320-321, 143 P2d 917, 145 P2d 991 (1944); *Emmons v. Southern Pac. Co.,* 97 Or 263, 276-277, 191 P 333 (1920).

In other jurisdictions, we find both justifications for the rule mentioned in the early cases. The language of the United States Supreme Court in *Continental Improvement Co. v. Stead,* 95 US 161, 24 L Ed 403, 405 (1877) is often cited:

"\* \* \* From the character and momentum of a railroad train, and the requirements of public travel by means thereof, it cannot be expected that it shall stop and give precedence to an approaching wagon to make the crossing first; it is the duty of the wagon to wait for the train. \* \* \*"

Some text writers adopted similar formulations of the rule. See, e.g., 3 Elliott on Railroads 308 § 1153 (2d ed 1907); 2 Wood on Railroads 1510 § 323 (Minors ed 1894).

■■ We think the real reason for the rule, in accord with the emphasis in our own cases, is the public interest in maintaining the efficient operation of common carrier railroads. It is true that a train has a fixed direction of travel and is stopped less easily than are motor vehicles. The major difficulty in requiring it to stop at intersections is the adverse effect such a rule would have on efficient railroad operation. As the court said in *Bunton v. Atchison, T. & S. F. Ry. Co.,* 100 Kan 165, 163 P 801, 802-803 (1917):

> "* * * The trains must be operated with dispatch. The public demands that service; and that this may be done, the duty to avoid getting run into at a railroad crossing in the open country is chiefly imposed upon the person who seeks to cross the railroad track—not out of regard for the railroad company, but because expedition of railroad operation is exacted by the public at the hands of the railroad company."

Some years later the Kansas court had before it a case involving a collision between a motor vehicle and a locomotive operated on private property for the private uses of a manufacturing plant. The court rejected the argument that the duties of the driver of the motor vehicle at the intersection were the same as those at an ordinary railroad crossing. After quoting the above paragraph from *Bunton,* the opinion continues:

> "Defendant's Diesel engine had no schedule to maintain in furtherance of the public service or welfare. The expedition with which commercial

railroad operations are demanded by the public did not obtain in the instant case and that fundamental reason for the particular care required of persons crossing its tracks is lacking here. * * *" *Kniffen v. Hercules Powder Co.,* 164 Kan 196, 188 P2d 980, 989 (1948).

We have been cited to no cases holding otherwise. The only case cited by the parties involving a similar question, while not directly in point, supports this position. *J. Ray Arnold Lumber Co. v. Carter,* 91 Fla 548, 108 So 815, 819, 46 ALR 1068 (1926) holds that a company which operates a log train incident to the operation of a sawmill, for the sole purpose of transporting logs from the forest to its mill, is not a "railroad company" within the provisions of a statute shifting the burden of proof of due care to the railroad company in negligence cases.

We conclude that where a motor vehicle on a public road and a railroad vehicle being operated for private purposes on a private track approach an intersection simultaneously, the rule giving common carrier railways the right of precedence has no application. Because the jury was instructed to the contrary in this case, defendants are entitled to a new trial.

Another assignment of error raises a question which is likely to come up again if the case is re-tried, and which we think merits discussion in this opinion. There was conflicting and uncertain evidence as to whether on the day of the accident there was at the intersection a sign directing traffic on the Silver Lake Road to stop. The trial court instructed the jury that if the stop sign was there, the failure of the driver of the truck to stop would be negligence as a matter of law. Defendants excepted on the ground that there was no evidence that the stop sign, if it was in place, was

an official sign. In fact, the evidence indicates that it was not.

Mr. Biehn, Weyerhaeuser Company's trainmaster, testified that it was his job to see that signs were up, that Weyerhaeuser installed signs in the area as a safety precaution, and that in doing so the company acted without authority from any governmental body. He also testified that Weyerhaeuser had posted stop signs at that intersection in the past, and that he did not know whether the company had ever applied for authority to post stop signs. There was no evidence that such authority had ever been obtained.

■ Our statutes require obedience only to stop signs which are installed or authorized by public bodies or officials. ORS 483.016 (1), 483.128.① In *Nichols v. Union Pacific R. R. Co.*, 196 Or 488, 250 P2d 379 (1952) the court considered the effect of a stop sign on the railroad right of way. There was evidence that the sign had been continuously in place for a period of eight to eleven years, but no evidence of how it came to be there. The railroad argued that because the sign had been in existence for many years there was a presumption that it had been lawfully erected, and that in the absence of evidence to the contrary there was a duty to observe it as an official stop sign. The court held that there was no such presumption:

> "There is no evidence whatever in the record to show by whom or when the sign was erected on de-fendant's property. Had the evidence disclosed its erection by some officer of the city of Hood River

---

① ORS 483.138 prohibits the installation of unauthorized stop signs and declares them to be a nuisance. The parties have not argued the applicability of this statute and, because the evidence indicates that Silver Lake Road is under the jurisdiction of the United States Forest Service and is not a state or county road, we do not consider the question.

or by some representative of the State Highway Commission, or its location upon a public thoroughfare, it might then be presumed that in the erection of the sign, official duty had been regularly performed. But certainly no presumption may be indulged in that this particular sign located upon private property had been placed there by some official of the city or state. The erection of such a sign upon private property, without the consent of the owner, would constitute a trespass." 196 Or at 502.

It held that the trial court properly refused to instruct that failure to observe the sign was negligence as a matter of law. The presumption of legality was allowed in *Schoenborn v. Broderick*, 202 Or 634, 277 P2d 787 (1954) where it appeared that a traffic signal had been installed by private parties, but at the request and under the supervision of the public authorities.

■ In the present case, the evidence did not show what the stop sign looked like or on whose property it was located. There was no evidence that it resembled an official stop sign and the only evidence on the question indicated that the sign was installed by Weyerhaeuser Company without any authorization by the appropriate public officials. The case is controlled by *Nichols v. Union Pacific R. R. Co.*, supra, and it was error to submit the case to the jury on instructions that failing to stop as directed by the sign would be negligence per se.

Reversed and remanded for a new trial.