Argued May 17; affirmed July 11, 1933

# FIDELITY RESERVE & LOAN CO. *v.* LINCOLN COUNTY LOGGING CO.

(23 P. (2d) 905)

*Herbert L. Swett,* of Portland (Dey, Hampson & Nelson, of Portland, on the brief), for appellant.

*Fletcher Rockwood,* of Portland (Carey, Hart, Spencer & McCulloch, of Portland, on the brief), for respondent.

ROSSMAN, J. In the year 1930 the plaintiff was engaged in the business of financing industrial enterprises, the defendant in the logging business, and the Anchor Tug Boat Company in towage service. October 12, 1929, the defendant and the Anchor Company effected an agreement whereby the Anchor Company undertook to tow the defendant's log rafts for a consideration. Some time in 1930 the Anchor Company applied to the plaintiff for a loan. March 6, 1930, the defendant signed a letter addressed to the plaintiff wherein it stated:

"We understand that the Anchor Tug Boat Company is negotiating with you for the purpose of making a loan of $7,500.00 and at their request we are writing this letter to you to say that the Anchor Tug Boat Company was employed by us in the year 1929, and that we have contracted with them for services during 1930 and 1931. We paid the Anchor Tug Boat Company an amount in excess of $40,000 during 1929 and expect to exceed this figure each year during the years 1930 and 1931. We wish to say that upon written authorization from the Anchor Tug Boat Company we will withhold a sum of $6,600 from their gross earn-

ings during the year 1930 and see that this sum reaches your company at the rate of $550.00 per month.''

March 11, 1930, the Anchor Company wrote a letter to the defendant stating:

''In accordance with the terms of your letter of March 6, addressed to the Fidelity Reserve & Loan Company, we hereby authorize you to withhold $6,600 from our gross earnings during the year 1930 and see that this amount is paid to the Fidelity Reserve & Loan Company at the rate of $550.00 per month. This is in accordance with our agreement with the Fidelity Reserve & Loan Company whereby we have borrowed from them $6,600 payable in equal monthly installments of $550.00.''

March 15, 1930, the plaintiff and the Anchor Company attached their signatures to an instrument reading as follows:

''This agreement made this 15th day of March, 1930 by and between Fidelity Reserve & Loan Company, an Oregon corporation, first party, hereinafter called Loan Company, Anchor Tug Boat Company, an Oregon corporation, second party, hereinafter called Tug Boat Company, and Lincoln County Logging Company, third party, hereinafter called Logging Company,

''Witnesseth:

''Contemporaneously herewith, the Loan Company is about to loan to the Tug Boat Company certain moneys. As evidence of said indebtedness, the Loan Company has secured from the Tug Boat Company a promissory note in the amount of Six Thousand Six Hundred ($6600.00) Dollars dated this date, the terms of which note are known to all parties hereto, said note providing among other things for payment at the rate of Five Hundred Fifty ($550.00) Dollars per month, beginning April 15, 1930 and continuing monthly thereafter on the 15th day of each and every month. The Tug Boat Company and the Logging Company en-

tered into an agreement under date of October 12, 1929 whereby the Tug Boat Company agreed to perform certain towing services for the Logging Company, among other things for the year 1930 and during the season of 1931. It is contemplated under this agreement that the Logging Company will pay the Tug Boat Company an amount in excess of Forty Thousand ($40,000.00) Dollars for each of these years.

"This agreement is entered into for the purpose of securing the aforesaid promissory note out of the gross proceeds which may accrue to the Tug Boat Company from the Logging Company under said contract.

"It is hereby agreed by and between the parties aforesaid as follows:

"(1) The Tug Boat Company does hereby assign to the Loan Company all its right, title and interest in and to the gross earnings from this date accruing on the said contract between the Tug Boat Company and the Logging Company insofar as it is necessary to cover the full principal amount of said promissory note. For said purpose the Tug Boat Company assigns to the Loan Company the sum of Six Thousand Six Hundred ($6,600.00) Dollars from the proceeds of the gross earnings after this date under said contract. The Tug Boat Company authorizes said Loan Company to collect said sum direct from the Logging Company without any further authorization than this agreement being necessary.

"(2) The Logging Company agrees to retain and withhold the sum of Six Thousand Six Hundred ($6600.00) Dollars from the gross earnings of the Tug Boat Company under the said towing contract for the year 1930 and to pay the said sum to the Loan Company at the rate of Five Hundred Fifty ($550.00) Dollars per month for twelve successive months on the 15th day of each month beginning April 15, 1930. No deductions shall be made in computing gross earnings for any offsets or counterclaims or other claims of whatsoever nature by the Logging Company against the Tug Boat Company.

"(3) In consideration of the premises, the Loan Company agrees to consummate said loan and advance to the Tug Boat Company the moneys in return for which said promissory note is hereby executed by the Tug Boat Company to the Loan Company."

This instrument was not signed by the defendant although its signature thereto was requested. A check of the plaintiff, payable to the Anchor Company, dated March 15, but which did not pass through the bank upon which it was drawn until March 17, paid to the Anchor Company the amount of the loan.

In 1929 the defendant overpaid the Anchor Company the amount due it for towing service to the extent of $812.31. The gross earnings of the Anchor Company for towing services performed by it for the defendant in the period January 1, 1930, to March 6, 1930, were $4,423.79. January 1, 1930, to March 6, 1930, the defendant paid to the Anchor Company $3,-500. When the debit in defendant's favor for overpayment in 1929 is added to the sum of $3,500 just mentioned we have a total of $4,312.31. When this is deducted from the aforementioned sum of $4,423.79 a debit of $111.48 is revealed in the Anchor Company's favor on March 6.

In the month of March, 1930, following the 6th day, the Anchor Company towed for the defendant two rafts of logs whereby it earned $822.99. After that it performed no more services for the defendant which ceased operations entirely on June 1, 1930, due to the lack of demand for logs. April 15 and May 15, 1930, the defendant paid the plaintiff $550, being a total of $1,100. Thus, its payments exceeded the amount which the Anchor Company earned subsequent to March 6.

A recapitulation of the above follows:

January 1, to March 6, 1930, the Anchor Company earned ............................................................$4,423.79
Subsequent to March 6 it earned ......................... 822.99

Total ......................................................................$5,246.78
Defendant paid to plaintiff ................................... 1,100.00

$4,146.78

Debit in favor of defendant December 31, 1929 ....................................................................$ 812.91
Payments to Anchor Company in 1930 ............. 3,500.00

$4,312.91

The plaintiff claims that defendant's letter, dated March 6, bound the latter to pay the plaintiff all of the Anchor Company's earnings in the calendar year 1930 not exceeding $6,600, and it, therefore, seeks judgment for the sum of $4,146.78. The defendant claims it was bound to pay the plaintiff only the sums earned by the Anchor Company after March 6, 1930, and that it has fully discharged its duty.

■ The plaintiff contends that the circuit court erred when it received in evidence the document dated March 15, and bearing the signatures of the plaintiff and the Anchor Company. The evidence shows that this contract was prepared by the plaintiff's attorney and the record indicates that it was produced from the files of the plaintiff. It will be observed that this instrument recites:

"This agreement is entered into for the purpose of securing the aforesaid promissory note out of the gross proceeds which may accrue to the Tug Boat Company from the Logging Company under said contract. * * * The Tug Boat Company does hereby assign to the Loan Company all its right, title and interest in and to the gross earnings from this date accruing on the said contract between the Tow Boat

Company and the Logging Company insofar as it is necessary to cover the full principal amount of said promissory note. For said purpose the Tug Boat Company assigns to the Loan Company the sum of $6,600.00 from the proceeds of the gross earnings after that date under said contract.''

The plaintiff, after arguing that the provisions of this instrument never went into effect, contends that it was therefore inadmissible in evidence. Whether this instrument became a part of the contracts existing between the plaintiff, Anchor Company, and the defendant or not the statements just quoted nevertheless are admissions against the interest of the plaintiff and, therefore, the document was admissible in evidence. This assignment of error discloses no merit.

■■ Before resorting to the aid which the instrument just mentioned affords in construing the language of the letter of March 6, let us revert to that letter. It will be recalled that the plaintiff contends that that letter bound the defendant to pay to the plaintiff all of the Anchor Company's earnings in the entire year of 1930 to the extent of $6,600. It contends that the meaning of the phrase ''from their earnings during the year 1930'' is clear. This phrase was written after more than two months of 1930 had passed. March 6, 1930, was too late to perform acts which needed to be done prior to that time, and hence in determining the meaning of the phrase we can properly place ourselves in the position of the parties, ascertain what they had already done and then determine what they meant by the language under consideration. At that time the defendant owed the Anchor Company only $111.48. All other sums earned by that company while in defendant's service had been paid to it. The plaintiff made no inquiries whatever concerning the balance due the Anchor Company March 6. It freely concedes

that it possessed no information upon that subject at that time. This fact strongly indicates that the plaintiff was not interested in past earnings but was looking solely to the future. The instrument of March 6 was nothing more than an expression by the defendant of its acquiescence in the contemplated assignment by the Anchor Company to the plaintiff of $6,600. Partial assignments require the debtor's consent. *State Bank of Sheridan v. Heider,* 139 Or. 185 (9 P. (2d) 117); *McDaniel v. Maxwell,* 21 Or. 202 (27 P. 952, 28 Am. St. Rep. 740); Williston on Contracts § 442. The Anchor Company could assign nothing which had already been paid to it and the plaintiff could not reasonably assume that the defendant would agree to pay once more a debt which it had already discharged. Here again we have a circumstance indicating that the instrument of March 6 was prospective in character and not retrospective. Moreover, the letter of March 6 states: "We will withhold a sum of $6,600.00." It could not withhold sums which it had already paid to the Anchor Company. The letter agrees to withhold money in the event the Anchor Company gives "written authorization". Written authorization from that company would be entirely unnecessary if the defendant was promising to pay to the plaintiff a sum which was not due to the Anchor Company because of previous payment. It would seem strange for the Anchor Company to borrow from the plaintiff $6,600 less $738 interest and service charges if the Anchor Company could have drawn down from the defendant this same sum of $4,146.78 for which the plaintiff demands judgment. The above circumstances, the prospective character of the entire letter, together with other circumstances which we shall not mention, convince us that the plaintiff had no concern with the payments which had al-

ready been made, but was relying for security upon the future earnings of the Anchor Company.

■■ Reverting to the instrument of March 15, we believe the portion above quoted clearly indicates that the plaintiff was entitled only to the unpaid earnings of the Anchor Company. We also are of the opinion that this instrument was a part of the contract existing between the parties. The defendant was not bound to pay anything to the plaintiff until the Anchor Company had granted "written authorization" therefor. March 11 the Anchor Company presented to the defendant written authorization for payment to the plaintiff. The record indicates that thereafter the plaintiff consulted an attorney and that he prepared the instrument dated March 15. This circumstance, together with the fact that the plaintiff had not yet handed to the Anchor Company the amount of the loan, warrants the inference that the plaintiff was not satisfied with the Anchor Company's letter of March 11. The check, which transferred to the Anchor Company the amount borrowed, is dated March 15 and was cashed March 17. If the events did not transpire in the above order the plaintiff could have readily shown the truth, but it confined its efforts to a statement by its president declaring that the instrument of March 15 was not a part of the agreement of the parties. The conclusion which we draw from the above is that the plaintiff rejected the letter of March 11 as the "written authorization" demanded by the defendant's letter of March 6 and insisted upon the agreement dated March 15. When that instrument was signed and was delivered to it the transaction was completed by the delivery of the check. Thus the agreement of March 15 is one of the written instruments expressing the agreements of the parties. The plaintiff criticises the instrument of March 15 because it

does not contain the defendant's signature. It did not require that signature to render it effective.

■ The plaintiff contends that defendant's answer is insufficient to present payment as a defense. The complaint alleged that the defendant promised the plaintiff that if it would lend to the Anchor Company $6,-600 the defendant would withhold from that company's 1930 earnings $6,600 and pay it to the plaintiff at the rate of $550 a month, that in 1930 the Anchor Company's earnings were $5,221.88, and that the defendant paid the plaintiff only $1,100. The answer admitted the averment concerning the payment by defendant to plaintiff of $1,100, but denied the charges which averred that the contract was as stated in the complaint. The issue, therefore, concerned the terms of the agreement and not the amount of the payments. During the course of the trial no contention arose concerning the pleadings and the plaintiff at no time declared itself misled by the defendant's pleadings. Defendant's evidence concerning the amounts which it had paid to the Anchor Company and to the plaintiff was received without objection; in fact, a part of it came in with the express approval of the plaintiff. Section 7-510, Oregon Code 1930, provides that "upon an appeal from a judgment the same shall  *   *   * only be reversed or modified for errors substantially affecting the right of the appellant". We believe that the answer violates no rule of pleading and that, if it is susceptible to the construction placed upon it by the plaintiff, the limitation placed upon our power to reverse a judgment by section 7-510 precludes a reversal.

Having adopted the above views, it follows that the plaintiff was entitled to receive only the unpaid amount earned by the Anchor Company after March 6.

The judgment of the circuit court is affirmed.

BEAN, BELT and KELLY, JJ., concur.