Argued July 9, 1971, affirmed February 2, 1972

THE FULTON INSURANCE COMPANY ET AL,
*Respondents, v.*
WHITE MOTOR CORPORATION, *Appellant.*

493 P2d 138

*Kenneth D. Renner,* Portland, argued the cause for appellant. With him on the briefs were Souther, Spaulding, Kinsey, Williamson & Schwabe, Roland F. Banks, Jr., and Ridgway K. Foley, Jr.

*David N. Hobson,* Portland, argued the cause for respondents. On the brief were Phillips, Coughlin, Buell, Stoloff & Black and Donald C. McClain.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, HOWELL, and FOLEY, Justices.

McALLISTER, J.

This is an action for common-law indemnity. Defendant is the manufacturer of a dump truck. Plaintiffs are the insurers of Elmer Griffin and Steven Griffin, the owner and driver of the truck, and of the contractor and subcontractor on a job where the truck was being used. On May 31, 1967, the truck was loaded with rock and was being driven to Lake Oswego from a quarry near Stafford. Plaintiffs' third amended complaint alleges that during the trip "the suspension system on the left front axle failed causing the load of rocks and gravel being carried to shift to the left and causing the rocks to spill off the truck and fall upon

a vehicle * * *." The falling rocks fatally injured the driver of the other vehicle, damaged the car, and injured three passengers.

As a result of this accident a wrongful death action was brought against plaintiffs' insureds. Plaintiffs settled that case and also the personal injury and property damage claims. Plaintiffs now seek indemnity from defendant, the manufacturer of the truck, charging it with negligent manufacture and with strict liability for sale of the truck in an unreasonably dangerous condition. After trial to a jury, plaintiffs had verdict and judgment in the total amount claimed. On appeal, for the first time, defendant has demurred to the complaint on the ground that it fails to state a cause of action.

■ In an action for indemnity, the claimant must plead and prove that (1) he has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter. Restatement, Restitution § 76, 331 (1937); *Nelson v. Sponberg*, 51 Wash2d 371, 318 P2d 951, 954 (1957); *Aetna Freight Lines, Inc. v. R. C. Tway Company*, 352 SW2d 372, 373 (Ky App 1961). The last requirement means that, although the claimant must have been legally liable to the injured third party, his liability must have been "secondary" or his fault merely "passive," while that of the defendant must have been "active" or "primary." *Kennedy v. Colt*, 216 Or 647, 653-654, 339 P2d 450 (1959); *Astoria v. Astoria & Columbia River R. Co.*, 67 Or 538, 547-548, 136 P 645, 49 LRA NS 404 (1913); *Jackson v. Associated Dry Goods Corp.*, 13 NY2d 112, 192 NE2d 167, 169 (1963); *Bush Term. Bldgs. v. Luckenbach S.S.*

*Co.,* 9 NY2d 426, 174 NE2d 516, 517-518 (1961). In a recent discussion of indemnity in *General Ins. Co. v. P. S. Lord,* 258 Or 332, 482 P2d 709 (1971) the court observed that the traditional formulations of active and passive negligence, or primary and secondary liability, do not provide precise guidelines for deciding close cases. Nevertheless, the complaint in an indemnity action must include facts which, if proved, would establish each party's liability to the injured third party, and that the plaintiff's liability was not based on conduct which ought to bar his recovery, however that conduct is described.

The complaint in this case adequately alleged that the accident was caused by defendants in furnishing a defective truck. It also adequately alleges that plaintiffs, on behalf of their insureds, paid the damage claims arising out of that accident. It fails, however, to allege facts showing that the owner and operator of the truck[1] were secondarily liable for those damages—that is, that there was liability under the law, but no conduct which would bar a right of indemnity.

It is alleged that while Steven Griffin was driving the truck, as the agent and employee of Elmer Griffin and the other insureds, the suspension system failed, causing the load to shift and rocks to fall off onto a passing car. The complaint further alleges that the defects in the suspension system existed when the truck left defendant's possession, and that they were not known to the Griffins prior to the accident. The settle-

---

[1] This opinion will focus on the problem of the liability of Elmer Griffin, the owner, and Steven Griffin, the driver of the truck. If there was any liability on the part of the other insureds, it was solely because Steven Griffin was acting as their agent at the time of the accident. Their liability is entirely dependent upon his.

ment of the damage claims was reasonable and necessary, the complaint alleges, in view of the "probable liability" of the Griffins and the other insureds.

■ Probable liability is not enough. If the claimant's actual liability has not been established by a judgment, facts establishing it must be pleaded and proved in the indemnity action. *National Surety Co. v. Johnson,* 115 Or 624, 239 P 538 (1925); *Aetna Freight Lines, Inc. v. R. C. Tway Company,* supra; *Nelson v. Sponberg,* supra. Here it is alleged only that the Griffins were unaware of the defect which caused the accident. No facts are alleged showing their liability for failure to discover an unknown defect. For all the complaint shows, the defect may have been undiscoverable by the exercise of the highest degree of care.

■ Plaintiffs contend that applicable safety laws make Steven Griffin and his employers liable simply because he was driving the truck in a defective condition. They rely on ORS 483.510:

"* * * no vehicle shall be driven or moved on any highway unless it is so constructed or loaded as to prevent its contents from dropping, sifting, leaking or otherwise escaping therefrom."

They also rely on the following rule promulgated by the Oregon Public Utility Commissioner:

"(1) All motor vehicles must at all times be kept in a good state of repair.

"(2) If, during any trip, any vehicle or part thereof becomes so defective or inefficient as to endanger passengers, freight, the operator, other users of the highway or property adjacent to the highway, the vehicle must be stopped and the condition remedied before any continued operation is made." Or Adm Rules ch 860 § 35-020.

The Commissioner's rules cover private as well as common carriers, and have the force of law. ORS 767.445(1), (3).

We have held that violation of a safety equipment statute is negligence per se, unless the violation consists of a defect which could not have been discovered by the exercise of the highest degree of care. *Ainsworth v. Deutschman*, 251 Or 596, 599-600, 446 P2d 187 (1968). ORS 483.510 is a safety equipment law within the rule of *Ainsworth* and prior cases on negligence per se; as to the Commissioner's rule we express no opinion. However, even if we assume that a violation of either the rule or the statute may be negligence per se, the complaint did not allege such a violation. There are no facts alleged tending to show that the Griffins failed to exercise the highest degree of care in inspecting the truck, or that the defect could have been discovered in any inspection.[2]

---

[2] Plaintiffs also argue that the complaint is sufficient in that it states a cause of action based on defendant's strict liability as the supplier of a defective chattel. Plaintiffs argue that in cases of strict liability on the part of the indemnitor, no allegation of liability on the part of the indemnitee is necessary, relying on Suvada v. White Motor Company, 32 Ill 2d 612, 210 NE2d 182 (1965). *Suvada* was an indemnity case in which the Illinois Supreme Court first adopted the rule of strict liability for defective products stated in Restatement (Second) of Torts § 402A. The defendant in that case argued that plaintiffs were joint tortfeasors and could not recover indemnity. The court agreed that plaintiffs' liability to the injured parties must have been based on negligence, but held that this negligence would not as a matter of law preclude indemnity. The following language is that upon which plaintiffs rely:

"* * * Indemnity here is not, however, premised on any theory of active and passive negligence. (To require proof that Bendix [the manufacturer] was actively negligent would be the antithesis of strict liability. * * *" 210 NE2d at 189.

It is clear from the above language and its context that the court did not intend to dispense with the requirement of liability on

■■ In assessing the sufficiency of the complaint when first attacked after judgment, we are committed to a liberal construction in favor of the plaintiff, so that the complaint will be upheld if possible. *Politte v. Vanderzee,* 256 Or 461, 473 P2d 1013 (1970). Nevertheless, the total omission of a material and necessary allegation has been held fatal. *Johnson v. School District No. 12,* 210 Or 585, 589, 312 P2d 591 (1957); *Duby v. Hicks,* 105 Or 27, 209 P 156 (1922); *Booth v. Moody,* 30 Or 222, 46 P 884 (1896); *Ball v. Doud,* 26 Or 14, 23-24, 37 P 70 (1894). Failure to allege the Griffins' secondary liability is such a total omission.

We next consider whether this defect, without more, requires a reversal. In the past we have reversed when we found a pleading, challenged for the first time after verdict, to be fatally defective. Sometimes we have given permission to ask leave of the trial court to amend the pleading. See, e.g., *Leesi v. Yamhill County,* 136 Or 295, 301, 298 P 911 (1931). *Duby v. Hicks,* supra, 105 Or at 36. But see *Booth v. Moody,* supra, 30 Or at 226. We are of the opinion that reversal in such cases is often wasteful, and may tend to encourage counsel to delay until after the trial, as a matter of tactics, an attack on an arguably defective pleading. We do not think reversal is required in every case.

ORS 16.330 provides:

"If no objection is taken, either by demurrer

the part of the plaintiffs. Rather, the holding appears to be that a negligent plaintiff may recover indemnity from a defendant who is strictly liable under the principles of § 402A, and that in such cases the court will not weigh the respective fault of the parties. The case was so interpreted and applied by the Illinois Appellate Court in Texaco, Inc. v. McGrew Lumber Company, 117 Ill App 2d 351, 254 NE2d 584, 588 (1969). Plaintiffs' reliance on these cases is misplaced.

or answer, the defendant shall be deemed to have waived any objection, save for the objection to the jurisdiction of the court, and the objection that the complaint does not state facts sufficient to constitute a cause of action. * * *"

We have often said, relying on this statute, that the objection that the complaint fails to state a cause of action is never waived. It is true that the mere failure to raise the question by demurrer before answer does not waive it. However, the statute does not direct what shall be done when the question is raised for the first time on appeal.

In *Carver v. Jackson County,* 22 Or 62, 63-64, 29 P 77 (1892) the court, considering the reasons for noticing basic defects in the complaint even though not properly assigned as error, said:

"* * * The reason of this exception was not stated [in prior cases], but no doubt it is that in a case where the court below was without jurisdiction or where it acted upon a pleading which was utterly destitute of legal merit, that is, which entirely failed to state a cause of action or defense, the court was without power to render a judgment that would be of any validity, and therefore rather than encumber its records with nullities in the form of void judgments the court would of its own motion take notice of the objection though not assigned as error in the notice of appeal."

In a later case, however, it was decided that a judgment rendered on a deficient complaint was merely voidable, not void, and was vulnerable only to direct attack in the manner permitted by statute. *Askren v. Squire,* 29 Or 228, 45 P 779 (1896). See also, *North Pacific Cycle Co. v. Thomas,* 26 Or 381, 38 P 307 (1894). This position appears to be in accord with the general

rule. See James, Civil Procedure § 11.6, 539 (1965); 1 Freeman on Judgments § 363, 757 (5th ed 1925). Hence such a judgment would not be a nullity, but would stand as a valid judgment unless attacked by the proper party in the proper manner. It is not, therefore, necessary to the integrity of the court records that such defects be noticed by the court.

A complaint may fail to state a cause of action for two reasons. It may affirmatively show on its face that, if all the allegations are true, the plaintiff has no cause of action. Or it may merely fail to state a cause of action because it omits some necessary allegation which, if added, would not be inconsistent with the facts already alleged. The present case is of the second type; from the face of the complaint it appears quite possible that plaintiff could, by additional allegations, state a cause of action. A number of jurisdictions have made this distinction the basis of the rule determining whether an objection to a defective complaint may be raised for the first time after trial or after pleading to the merits. In Missouri the leading case is *Kemper v. Gluck*, 327 Mo 733, 39 SW2d 330 (1931). A statute substantially identical to ORS 16.330, quoted above, was in effect. Another statute provided:

> " 'When a verdict shall have been rendered in any cause, the judgment thereon shall not be stayed * * * nor any judgment * * * be reversed, impaired or in any way affected by reason of the following imperfections, omissions,' * * *

> " 'Eighth, for the want of any allegation or averment on account of which omission a demurrer could have been maintained;

> " 'Ninth, for omitting any allegation or averment without proving which the triers of the issue ought not to have given such a verdict.' "

Considering the effect of both statutes, the court said:

"* * * The rule would now seem to be this: Where the petition shows upon its face that the court is without jurisdiction or that no cause of action can be stated, such defect is not cured by verdict though not taken advantage of by demurrer. Where an inference may be drawn that the necessary fact possibly existed and might be shown, then the saving clauses, 8 and 9, in the Statute of Jeofails would apply. As applied to this case we may state the matter thus: Where the petition clearly states the plaintiff out of court, showing a want of jurisdiction, the defect cannot be cured after verdict by the Statute of Jeofails. But if the petition does not state affirmative facts which show a want of jurisdiction but merely fails to state a fact which would give jurisdiction and might be alleged consistently with the allegations of the petition, the failure to demur would be cured by verdict. * * *" 39 SW2d at 335.

A similar rule has been applied in Washington:

"It is undoubtedly still the rule that, if the complaint shows upon its face that the plaintiff has no cause of action and under no circumstances can have a cause of action, the court will stay the action at the earliest time the matter is brought to its attention. But technical defects, or defects that can be cured by amendment, can avail the objector only in the case he raises the objection either by motion or demurrer before he enters upon the trial. * * *" *Hamilton v. Johnson*, 137 Wash 92, 241 P 672, 673 (1925).⑨

---

⑨ See Hamilton v. Kiona-Benton Irrigation District, 45 Wash 2d 544, 276 P2d 583 (1954), in which there was no record of the evidence before the reviewing court and a material allegation going to the gist of the action was wholly omitted from the complaint. The judgment was reversed; the court said it could not presume that evidence on the omitted facts was offered at trial. Accord, Booth v. Moody, 30 Or 222, 46 P 884 (1896).

The court said that although the statute provided that the failure of the complaint to state a cause of action could be raised at any time, that statute had been modified by subsequent statutes permitting liberal amendment procedures and directing the appellate court to disregard all technicalities and to consider all amendments which could have been made as made.

Similar results have been reached in other jurisdictions without resort to statutes such as those relied on by the Missouri and Washington courts, at least where the defect in the complaint was cured by the evidence. *Bauman v. Bean,* 57 Mich 1, 23 NW 451 (1885); *Stewart v. St. Paul Fire & Marine Ins. Co.,* 171 Minn 363, 214 NW 58 (1927); *Painter v. Sutherland,* 37 NM 113, 19 P2d 188 (1933); *Harshman v. Northern Pac. Ry. Co.,* 14 ND 69, 103 NW 412, 414 (1905); *Johnson v. Burnside,* 3 SD 230, 52 NW 1057 (1892). The problem was discussed at length in *Claughton v. Johnson,* 47 Wyo 536, 41 P2d 527 (1935), in which cases from many states are collected. The Wyoming court approved what it called the "liberal rule" that a case will not be reversed if it has been fully and fairly tried and no prejudice resulted from a material omission in the pleadings:

"* * * In all of these cases which hold to the more liberal rule, the ultimate criterion as to whether a case should be reversed on account of defects or deficiency in the pleadings is, as to whether or not the complaining party has been prejudiced, or his substantial rights have been affected, and all other rules relating to the same subject are held to be subordinate thereto. They evidently proceed on the theory that—assuming that the court has jurisdiction—pleadings are but a means to an end and not an end in itself, and that, while parties are entitled to know the claims of their adversary,

no clause [sic] of complaint exists when that purpose has in any manner been subserved, and when no prejudice results from lack of allegations, provided, of course, that a cause of action exists in fact and has been shown; * * *." 41 P2d at 530.

Our own statutes and Constitution direct us that cases, once litigated, are not to be reversed unless substantial rights have been affected. ORS 19.125(2); Oregon Const. Art. VII (Amended) § 3.

■ We hold that where the defect in a pleading, even though material, consists of a mere omission to state a necessary fact, and it appears that the omitted fact could have been added by amendment, the entire record will be examined when the pleading is attacked for the first time on appeal. If we can determine that the omission did not result in surprise or prejudice, or prevent a full trial of the real issues between the parties, and that the evidence disclosed the existence of a cause of action, we will not reverse, but will treat the case as though the question had been raised at the proper time and the pleadings amended accordingly. See *Fid. R. & L. Co. v. Lincoln County Log. Co.*, 144 Or 45, 54, 23 P2d 905 (1933). As we have been furnished with a complete transcript of the proceedings in this case, we do not need to decide how to deal with cases in which the evidence and instructions to the jury are not before us.

■ We are of the opinion that defendant was in no way prejudiced by plaintiffs' failure to state facts showing the liability of the Griffins. The record shows that defendant was well aware, during trial, that the Griffins' liability was an issue in the case. Defendant, in fact, elicited evidence on the question whether the alleged defect could have been discovered, and what kind of inspection would have been necessary to do

so. On cross-examination of plaintiffs' expert witness, defendant's counsel questioned specifically whether the visible evidence of faulty processing and metal fatigue, to which the expert had testified, would have been meaningful to an untrained person. Plaintiffs' evidence of maintenance and inspection procedures came in without objection that it was outside the scope of the pleadings, and defendant cross-examined on the same subject.

The trial court instructed the jury that in order for plaintiffs to recover, they must show that their insureds were passively at fault. The jury was also instructed, in the language of the Restatement, Restitution 407, § 93, that defendant's duty to indemnify Elmer Griffin was dependent on Griffin's liability for injuries caused by the alleged defect. Defendant did not object to either instruction as being outside the scope of the pleadings. Defendant itself requested an instruction on the liability of the driver of a vehicle for injury caused by an unknown defect.

We are persuaded by the record that defendant was aware that passive fault on the part of the owner and operator of the truck was an issue in the case, that the existence of this fault depended upon the kind of inspection which would have disclosed the defect, and that there was no surprise or prejudice because of the omissions in the complaint. The case was fully tried as though the issue had been adequately alleged.

In addition, there was evidence from which the jury could have found the Griffins guilty of passive fault. Plaintiffs' expert, Holt, testified that the spring showed evidence of faulty manufacture in the form of surface blisters and that fatigue cracks appeared in the spring and were present prior to the

final fracture. He also testified that both of these conditions were visible, and could have been seen in a diligent inspection, but that an untrained person such as a truck driver would not have understood their significance. The Griffins testified that regular inspections of the springs were made during maintenance work on the truck.

This evidence would permit the jury to find that the defect, although not discoverable by ordinary inspection, could have been discovered had the Griffins exercised the highest degree of care. That is, the jury could have concluded that a highly careful person making a visual inspection would have seen and been alerted by the surface cracks and blisters and would have obtained expert advice as to their significance. It could, therefore, have found an unexcused violation of ORS 483.510, in that the truck was driven on the highway in such a condition that its contents were permitted to escape—that the fracture of the spring was the result of a defect in construction, and the predictable effect of the fracture was that the load might shift and spill.

The case will not be reversed because of the defect in the complaint, as there was no prejudice to substantial rights and the defect was cured by the evidence.

What we have said also disposes of defendant's contention that its motions for nonsuit and for a directed verdict ought to have been granted because there was no evidence of the Griffins' liability.

■ The complaint in the wrongful death action charged only active negligence. Defendant argues that a nonsuit or directed verdict should have been granted because plaintiffs did not prove their reasons for settling that action and the other damage claims. Plaintiffs'

reasons for settling are immaterial. The issue in this case is not whether plaintiffs, at the time of the settlement, believed their insureds to be liable on any particular ground, but whether the evidence in this case disclosed passive, as opposed to active, fault. The following language from *American Fidelity & Casualty Company v. Bennett,* 69 Ohio L Abs 386, 125 NE2d 754, 758 (1952) is apt:

> "In the case now being considered, the lawsuits were settled before trial and there was no judicial determination of the alleged active negligence claimed against the subrogor by the third persons injured. A settlement of the lawsuits cannot be construed as an admission of the subrogor of the allegations of fact contained in the pleadings. Many considerations motivate a settlement other than the question of legal liability, as charged in the petition. In this case, for example, the fact that the subrogor considered himself secondarily liable because of the alleged negligence of defendant in omitting a cotter-pin from the right front wheel assembly, most probably was the reason for agreeing to a settlement."

 Defendant assigns as error an instruction to the jury in the words of the Public Utility Commissioner's rule, quoted above. The instruction was excepted to on two grounds—that the rule had not been pleaded, and that there was no evidence the operator of the truck ever had notice of the defect. There was no need to plead the rule in the complaint. The rule is subject to judicial notice and, as mentioned above, has the force of law.[4] However, the second ground of the exception is well taken. Subsection (2) of the rule provides:

> "If, during any trip, any vehicle or part thereof

---

[4] Rules filed with the Secretary of State pursuant to ORS 183.020 and compiled and published by the Secretary are subject

becomes so defective or inefficient as to endanger passengers, freight, the operator, other users of the highway or property adjacent to the highway, the vehicle must be stopped and the condition remedied before any continued operation is made."

This provision raises a duty to stop and correct a defect which develops during a trip. It is implicit in such a duty that the defect be one which is known or could be known. It was error to give this instruction, as there was no evidence which would have permitted the jury to find that Steven Griffin knew or could have known, while he was operating the truck, that the defect in the spring had developed into a dangerous condition. However, we do not believe defendant was prejudiced by this instruction. The jury was also instructed that a violation of the rule was excused if the violation was caused by circumstances beyond the operator's control and if compliance was impossible.[9] We must presume that the jury followed the court's instructions,[10] and, if it found that the rule had been vio-

---

to judicial notice. ORS 183.360(4). The Public Utility Commissioner has the authority to prescribe general rules governing carriers. ORS 767.445. His is a "state agency" within the definition in ORS 183.010(2), and his rules are to be filed with the Secretary of State pursuant to ORS 183.020. Laws of which the court takes judicial notice need not be pleaded. Coblentz v. State Ind. Acc. Com., 203 Or 258, 262, 279 P2d 503 (1955); Nichols v. Union Pacific R. R. Co., 196 Or 488, 503, 250 P2d 379 (1952); Dryden v. Daly, 89 Or 218, 223, 173 P 667 (1918).

[9] This formulation of the rule was disapproved in Ainsworth v. Deutschman, 251 Or 596, 600, 446 P2d 187 (1968), where we said the following statement is preferable:

"* * * a violation of a statute requiring adequate safety equipment is excusable if the defect could not have been discovered by the exercise of the highest degree of care."

However, neither party complained of the trial court's instruction, and it became the law of the case.

[10] Morrill v. Rountree, 242 Or 320, 326, 408 P2d 932 (1966); Ditty v. Farley, 219 Or 208, 216, 347 P2d 47 (1959).

lated, also found that violation to be excused. Compliance with the rule was, under the undisputed evidence, impossible.

■ Defendant next assigns as error another jury instruction. The court instructed the jury on the elements of strict liability for furnishing a dangerously defective product. Those instructions concluded:

> "* * * Therefore, if you find from a preponderance of the evidence that the defendant manufactured or sold the product in question, in such a defective condition, unreasonably dangerous to the ultimate consumer or user, and that such defect, if any, was a substantial factor in causing the plaintiffs' loss, then your verdict must be in favor of the plaintiffs and against the defendant."

Defendant argues that the instruction was faulty in that it directed a verdict for plaintiffs if the jury found defendant had furnished the truck in a dangerously defective condition and the defect was a cause of the accident, without regard to the other necessary elements of plaintiffs' case—liability on the part of their insureds, and their freedom from active fault. There was no exception to the instruction on this ground. Defendant's exception, in full was:

> "Then the only other one I have, in giving the strict liability instruction the Court concluded:
>
> "That if by proving that the vehicle was operated in a defective condition, and if they further prove that that defect rendered the vehicle unreasonably dangerous, then the plaintiffs would be entitled to recover.
>
> "When in fact if they proved that, defective fault would be involved."

Counsel's meaning is not clear. If we assume that by "defective fault" he meant "active fault," the point of

the exception is that the Griffins would necessarily be guilty of active fault if they operated the truck while it was in an unreasonably dangerous condition. As an earlier discussion in this opinion makes clear, this is not the case. In any event, the exception completely fails to call to the trial court's attention the defect relied on here.

In a later instruction, the court clearly instructed the jury that under either of plaintiffs' theories—negligence or strict liability—they could not recover if their insureds were guilty of active fault. The jury was also told that it was a condition of an indemnity action that each party be liable for the third parties' injuries. Considering the instructions as a whole, we do not think the error complained of was so manifestly prejudicial as to require reversal in the absence of a proper exception.

Defendant's other assignments of error are without merit and require no discussion.

Affirmed.

O'CONNELL, C. J., specially concurring.

I am of the opinion that the complaint was sufficient to state a cause of action for indemnity and that it would not have been demurrable if it had been attacked initially. At most it was subject to a motion to make more definite and certain. The complaint alleged that defendant was "primarily" liable, clearly inferring that plaintiffs were secondarily liable. There was also an allegation that the settlement made by plaintiffs was necessary in view of the probable liability of plaintiffs' insureds. Thus defendant was apprised of the theory of plaintiffs' case and if defendant needed further specific allegations to prepare its de-

fense it could have interposed a motion to make the complaint more definite and certain.

Since the pleading aspect of the case can be disposed of on this ground, it is not necessary to develop the theory adopted in the majority opinion which begins with the premise that the complaint was demurrable and then finds reasons for rehabilitating it.

FOLEY, J., joins in this specially concurring opinion.