Argued and submitted July 25, affirmed November 23, 1983

# SCHOOL DISTRICT NO. 4
## OF JACKSON COUNTY,
*Respondent,*

*v.*

# UNITED STATES GYPSUM CO.,
*Appellant,*

*v.*

# POLYMER BUILDING SYSTEMS,
## INC. et al,
*Respondents.*

(77-2838-L-3; CA A25457)

672 P2d 1201

Douglas A. Haldane, Eugene, argued the cause for appellant. With him on the briefs was Lyle C. Velure, Eugene.

Thomas C. Howser, Ashland, argued the cause for respondent Polymer Building Systems, Inc. On the brief were Cottle & Howser, and Douglas M. Engle, Ashland.

Robert L. Cowling, Medford, argued the cause and filed the brief for third party defendants, respondents Richards and Acord, dba Ekerson Roofing Company.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

The school district (district) sued United States Gypsum (Gypsum) on a breach of warranty theory. The district claimed that Gypsum had expressly warranted that its roofing material was suitable for use as insulation in a built-up roof, applied by a "hot mopped" process, and that the usual procedure of nailing down the roofing material was unnecessary. (Nails would have destroyed a vaporlock under the roof.) The district prevailed against Gypsum on its express warranty claim.

Gypsum, as third-party plaintiff, impleaded three third-party defendants: Polymer, the manufacturer of the roofing material, Ekerson Roofing, the roofer, and Rounds, the architect. Numerous motions were made by the various parties. Gypsum amended its original answer and third-party complaint four times.

Before Gypsum impleaded the third-party defendants, the district entered into binding arbitration with Todd Building Company, the general contractor for the roofing job. Ekerson, the roofer, voluntarily joined that arbitration. The arbitration only involved those three parties. The arbiters found that Todd Building and Ekerson had satisfactorily performed their contractual obligations and that the faults and defects in the roof as constructed were not caused by the method of application or the workmanship of Todd or Ekerson. The arbiters found that the cause of the roofing problem was that the roofing material was not suitable for use in a built-up roof using the hot mopped method of application.

Gypsum's four assignments of error boil down to two contentions. It argues that, because of four improper rulings by the trial judge, it was not able to get before the jury its claim on an express warranty of fitness for use in a particular application against Polymer and an indemnity claim against Ekerson for unworkmanlike performance of the subcontract to apply the roofing materials.

■ The answer to Gypsum's first contention (that the court wrongly prevented it from maintaining an express warranty of fitness for use in a particular application claim against the manufacturer of the building material, Polymer) is that Gypsum dropped that theory from its pleadings, either voluntarily or inadvertently. In Gypsum's original answer and

third-party complaint, dated December 5, 1978, there was no mention of an express warranty of fitness claim against Polymer. In its amended answer and third-party complaint dated July 5, 1979, Gypsum *arguably* (at best) pled an express warranty of fitness theory against Polymer.[1] Polymer moved to strike the two counts directed against it in that pleading *only* on the ground that each count contained two causes of action not separately stated. That motion was allowed. (Rounds, the architect, and Ekerson, the roofer, both filed demurrers. Rounds' demurrer was overruled. Ekerson's demurrer was not ruled on until a subsequent answer had been filed.)

Gypsum filed a second amended answer and third-party complaint on September 5, 1979. In Count I of that pleading Gypsum presented an indemnity claim against Polymer, based on the indemnity clause in the contract between Gypsum as purchaser and Polymer as manufacturer of the roofing material. In Count II Gypsum alleged a right to contribution against Polymer. For some reason, Gypsum dropped from its pleadings any mention of a claim against Polymer on an express warranty of fitness for use, even though at that point no motion had been directed at any warranty claim as such.

On November 5, 1979, Polymer demurred to Gypsum's "amended third-party complaint" (by which it must have meant the second amended third-party complaint, because the amended third-party complaint of July 5, 1979, had by then been supplanted by the second amended third-party complaint of September 5, 1979) on the ground that Gypsum's claims against Polymer "based upon breach of contractual obligations relating to warranty and indemnity" were time-barred. Why Polymer mentioned the warranty claim is not clear, for Gypsum had already (intentionally or accidentally) deleted any reference to a warranty in the pleading to which the demurrer was directed. A warranty of fitness for use claim was no longer in the case, if in fact it ever had been.[2]

---

[1] *See* note 2, *infra*.

[2] The only pleading which referred to "breach of warranties" was in Count I of the June 5 amended answer:

Unfortunately, when the trial court sustained Polymer's demurrer on January 9, 1980, its ruling was not responsive to the issue actually raised:

> "The court is of the opinion that both the first and second counts of [Gypsum's] claim against third-party defendant Polymer [* * *] assert breach of warranty theories of recovery."

The order goes on to sustain the demurrer on the ground that the "warranty theories" are time-barred. The court did not then have any pleaded warranty theories before it. On appeal, Gypsum argues that that ruling by the court prevented it from presenting a warranty of fitness claim, a claim that it had either voluntarily removed in its most recent pleading or had never made.

Gypsum's next pleading (filed February 29, 1980, and mislabled second amended answer and third-party complaint; it should have been designated as the third-amended answer and third-party complaint) dropped the contribution claim against Polymer and elaborated on the indemnity claim, the first count being for common law indemnity and the second being for indemnity under the contract. Like the September 5 amended answer, that pleading contains no mention of any warranty claim. In any event, Gypsum's indemnity claims against Polymer eventually went to the jury, which found for Polymer. The jury specially found that Polymer's roofing material was not defective. The only written warranty Polymer made to Gypsum was in its contract of sale, where it expressly warranted only that its roofing material would be free from defects. There may have been other, different oral or implied warranties.

The jury found Gypsum liable to the district on an express warranty of fitness theory: that Gypsum had told the school that Gypsum's roofing material (manufactured by

---

"If it is found that U.S. Gypsum Company is liable to Plaintiff for breach of warranties as alleged in Plaintiff's Complaint, such warranties and any breach thereof occurred as a result of warranties made to U.S. Gypsum Company by Polymer, and if said product was defective, as alleged in Plaintiff's Complaint, any such defect occurred as a result of the design and manufacture of the product by Polymer."

By its terms, the indemnity clause in the contract between Gypsum and Polymer related only to a defective product. Gypsum has *never* claimed the material was defective.

Polymer) would be suitable for the new roof. The evidence was that Gypsum assured the school that that was so, even though the usual procedure was to nail down that type of roofing material. Nails could not be used on the district's roof because of the vaporlock, and Gypsum assured the district that the roofing material, when applied by the hot mopped method, would be satisfactory. Although the roofing material itself was not defective, it was not suitable for that kind of roof when applied by that process. Gypsum's liability was based solely on its breach of express warranty of fitness for use in a particular application. The only way that Polymer could be liable to Gypsum (other than by indemnity) is if it had warranted to Gypsum that the roofing material would be suitable for the particular application. That claim was not pled again after it was dropped in September, and it was probably not *ever* pled.

Gypsum's second contention on appeal is that the trial court erred by not allowing it to get before the jury an indemnity claim against Ekerson for unworkmanlike performance of the contract to apply the material. Beginning with Gypsum's first amended answer and third-party complaint, it pleaded that, in the event that it were held liable to the district, then that liability was caused or contributed to by the unworkmanlike performance of Ekerson. That answer was filed on June 5, 1979. On July 5, Ekerson demurred to Gypsum's claim. On September 5, Gypsum filed its (first) second amended answer and third-party complaint, which contained the same language with respect to the claim against Ekerson. However, the indemnity claim and contribution claim were made separate counts. On November 7, the trial judge sustained Ekerson's demurrer to "the *amended answer* and third-party complaint on file herein." (Emphasis supplied.) That amended answer had of course already been supplanted by the second amended answer and third-party complaint.

Whether Gypsum understood the demurrer to apply to the by then non-functional amended answer to which the judge's order specifically refers or to Gypsum's then current (first) second amended answer seems to be a distinction without a difference, because Gypsum made identical claims against Ekerson in its (second) second amended answer and third-party complaint filed subsequent to the trial court's ruling on the demurrer. Whether the trial judge's ruling was

right or wrong is irrelevant, because Gypsum was in no way prejudiced by the ruling.

■ Ekerson filed a motion to dismiss the claim against it raised in Gypsum's (second) second amended answer. (It was *the same claim* for indemnity and contribution that Ekerson had successfully moved against before.) The motion was filed on June 5, 1980. On the morning of July 14, 1980, the trial judge granted Ekerson's motion to dismiss, because "* * * during oral argument defendant-third-party plaintiff [Gypsum] expressed a desire to replead his [sic] theory of recovery against defendant [Ekerson]." On July 14, in the afternoon, Gypsum filed a third amended answer (which should have been called the fourth amended answer) that deleted the indemnity claim, but left the contribution claim intact. In the trial court file the portions of that answer that were directed against Ekerson were crossed out, by whom we are not told and do not know. Gypsum never filed a subsequent amended answer. On August 22, 1980, Ekerson filed a motion to dismiss "the pleading designated third amended answer and third-party complaint" (which was then only a contribution claim) for the same reasons given in the June 5, 1980, motion. The August motion, however, was denied on September 9, 1980. Considering the similarity of the motions and the opposite results, the obvious implication is that the trial judge would not have granted Ekerson's June 5 motion to dismiss the indemnity claim or the contribution claim had not, as the judge noted, Gypsum requested *voluntarily* to replead. Thus, Gypsum voluntarily withdrew its indemnity claim, and it should not be able now to argue that it was prejudiced.

■ Nonetheless, it is impossible to see how Gypsum could obtain indemnity from Ekerson. The necessary elements of a common law indemnity claim are that 1) the person bringing the action must be liable to a third party, 2) the person from whom indemnity is sought also must be liable to the third party and 3) as between the two contestants, the defendant ought to pay. *Fulton Insurance Co. v. White Motor Corp.*, 261 Or 206, 493 P2d 138 (1972). For Gypsum to argue that Ekerson is liable to the district ignores the fact that Ekerson was cleared of any liability to the district in the arbitration process. It would be pointless to find for Gypsum on an error that ultimately could not lead to relief for Gypsum.

By its challenge to the trial court's granting summary judgment for Ekerson on the contribution claim, Gypsum attempts to raise a matter not properly before this court. It concedes that the summary judgment on the contribution claim was proper under *Blackledge v. Harrington,* 291 Or 691, 634 P2d 243 (1981). (In that case the court allowed a defendant to defeat a contribution action by using a judgment obtained in a separate action between him and the injured third party to establish conclusively that he was not liable to the original plaintiff.) Gypsum raises this issue on appeal only because, *if* this court were to give it a chance at an indemnity claim against Ekerson, Gypsum would lose summarily unless it could persuade the a court that *Blackledge* only applies to a statutory contribution claim and not to a common law indemnity claim. In essence, Gypsum seeks a declaratory ruling on the law of contribution. While that might be an open question, this is not the case to resolve it.

Affirmed.[3]

---

[3] The appeals against the district and Rounds were dismissed on stipulation.