**A.T. KEARNEY, INC., Plaintiff,**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York corporation, Defendant.**

Civ. No. 92–1536–HA.

United States District Court,
D. Oregon.

Aug. 9, 1994.

Douglas G. Houser, John A. Bennett, John P. Ashworth, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, OR, for plaintiff.

Michael H. Simon, Nancy E. Martin, Robert L. Aldisert, Perkins Coie, Portland, OR, for defendant.

## OPINION

HAGGERTY, Judge:

This is an action for negligence, negligent misrepresentation, contribution, and indemnity by A.T. Kearney, Inc. (ATK), a consulting firm, against International Business Machines (IBM). Plaintiff seeks to recover $13.25 million from defendant, which is the amount ATK paid to Fred Meyer ("FM") to settle a prior lawsuit brought by FM against ATK. Both parties seek summary judgment. For the following reasons, defendant's motion for summary judgment is granted.

## BACKGROUND

In 1989 FM retained ATK, an international management and information technology consulting firm, to provide professional transition management services. Plaintiff provided consulting services to FM from 1989 through mid-1991. These services included developing an "MIS" [Management Information System] Plan designed to provide enhanced computer processing power in FM

stores. This MIS Plan was also called an "architecture."

Plaintiff and FM solicited information regarding improving FM's system from several computer vendors, including defendant. In May 1989 IBM proposed using an IBM mainframe computer at the FM headquarters. This was rejected, and in October 1989 plaintiff recommended that FM use the "distributed MIS architecture," that did not use a mainframe computer.

Fred Meyer approved of and agreed to this proposal. In late 1989 and early 1990, FM purchased 100 AS/400 computers from IBM under an extensive written agreement between FM and IBM.

It is undisputed that plaintiff's new architecture presented a massive change in the way FM could conduct business, and that the architecture was soon deemed a failure. By mid-1991 FM had returned to a more traditional, "centralized" business structure. An IBM mainframe computer was installed at FM headquarters, and FM's relationship with plaintiff was terminated.

In September 1991, FM sued plaintiff for breach of contract, professional negligence, breach of fiduciary duty, and negligent misrepresentation. In October 1992, FM amended its complaint against ATK, increasing the damages sought from $14 million to $110 million. Plaintiff then filed this indemnity suit against IBM in state court in Oregon.

In December 1992 ATK settled its suit with FM by agreeing to pay FM $13.25 million. Plaintiff did not acknowledge fault or liability. While ATK was settling with FM, IBM petitioned to remove Kearney's suit against IBM to federal court. Defendant has now moved for summary judgment.

**STANDARDS**

■■■ Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477

U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir.), *cert. denied*, 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

■■■ The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *Id.* at 631. Inferences drawn from facts are viewed in the light most favorable to the nonmoving party. *Id.* at 630–31.

**DISCUSSION**

Plaintiff presents three sets of claims: (1) negligence and negligent misrepresentation; (2) contribution; and (3) indemnity. These are addressed in turn below.

**1. *ATK'S NEGLIGENCE CLAIMS***

Defendant grounds its motion against ATK's negligence claims on a December 1992 decision from the Oregon Supreme Court recognizing that negligence claims for the recovery of economic losses "must be predicated on some duty of the negligent actor to the injured party beyond the common law duty to prevent foreseeable harm." *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or. 149, 159, 843 P.2d 890 (1992).

This decision acknowledges that economic losses might be recoverable in some cases on a claim for negligent misrepresentation, but emphasizes that in such cases "the concept of duty as a limiting principle takes on a greater importance than it does with regard to the recovery of damages for personal injury or property damage." *Id.* The court in *Onita* chose not to specifically identify the types of relationships—besides a traditional fiduciary relationship—that could give rise to negligent misrepresentation liability, but did clearly exclude relationships founded upon

"arm's length transactions." *Id.* at 163, 843 P.2d 890.

Plaintiff acknowledges that *Onita* requires that a "special relationship" must exist before economic losses are recoverable under a theory of negligent misrepresentation. *See* Plaintiff's Brief in Opposition at 18 ("At bottom, the evidence demonstrates that IBM had the requisite special relationship with Kearney and Fred Meyer such that IBM owed a duty 'to exercise reasonable care to avoid misrepresenting facts.' *Onita,* 315 Or. at 165, 843 P.2d 890.").

Accordingly, ruling on defendant's motion for summary judgment on the negligence claims requires first determining whether the existence of a "special relationship" is an issue of law for the court to decide.

### A. Is the Existence of a Special Relationship a Question of Law?

■ At oral argument on the summary judgment motion, both parties acknowledged that the court in *Onita* established a case-by-case approach to determining the existence of a special relationship. *See Onita,* 315 Or. at 159, 843 P.2d 890 ("rather than adopting a black letter 'rule,' we opt to develop the scope of the duty and the scope of recovery on a case-by-case basis. . . .").

Plaintiff asserted that the court should either (1) find as a matter of law that a special relationship existed, or (2) leave the question for a jury to decide. Defendant contended that the recognition of a special relationship is based upon finding that duties were owed between parties. The Oregon Supreme Court has held that " 'duty' by definition appears as a legal issue and, if disputed, is decided by the court." *Fazzolari v. Portland School Dist. No. 1J,* 303 Or. 1, 4, 734 P.2d 1326 (1987).

Plaintiff points to no dispute between the parties that would require a factfinder's determination before the question of whether a special relationship existed could be answered. Defendant has accepted plaintiff's factual corrections and assertions regarding the case, for the purposes of this motion. This leaves only the interpretation of those factual assertions to determine the issue of whether a special relationship existed between the parties. This court concludes that this presents a question of law left to the court. In the absence of disputed material facts in the case, this court proceeds to determine whether a relationship sufficient to give rise to liability for negligent misrepresentation existed between ATK, IBM, and/or FM.

### B. Was there a special relationship between plaintiff and defendant?

■ There is little to support a conclusion that IBM shared a special relationship with plaintiff sufficient to give rise to liability for negligent misrepresentation under *Onita.* There was no contract existing between the two, and IBM received no compensation from ATK. Instead, defendant served as a vendor in supplying computers to FM that fulfilled ATK's proposal to FM.

Plaintiff argues that a special relationship had developed between IBM and FM because IBM had served as computer vendor to FM for over seven years. Plaintiff asserts that IBM "expanded" its relationship with FM and encompassed plaintiff in a "special, non-adversarial relationship" in September 1989. Plaintiff's Concise Statement of Facts at Para. 18. Plaintiff suggests that as a computer vendor for an information system, IBM made implicit and explicit commitments to support and advance the equipment the vendor sells, so that IBM's obligations to FM in assisting the implementation of the new system went beyond the parties' sales contracts.

Essentially, plaintiff contends that IBM's reputation for enhancing its sales with close cooperation with the buyer in implementing the merchandise should raise the relationships between IBM, plaintiff and FM to the "special" level required in *Onita.* Plaintiff emphasizes that IBM assigned personnel to work with the FM account full-time, and frequently referred to its relationship with FM as a "partnership." *See* references provided in Plaintiff's Memorandum, pp. 3–7. IBM itself characterized its "over-the-years" relationship with FM as a "partnership" (from deposition of IBM executive Randi

Reeder–Kangail, Ex. 11 to Bennett Affidavit).

Moreover, Kearney offers expert testimony from Theodore Grossman, a professor at Babson College:

> In reality, in the information systems community, the user, or selecting company, looks to the commitment of the computer hardware manufacturer, and the others involved in the solution, to in essence form a partnership with the customer to successfully implement an information system solution for the customer. Only the computer hardware manufacturer has the resources and knowledge of its customer base and its products to provide resources, advice and guidance to the customer and the customers' effort to implement an information system.

> \*  \*  \*  \*  \*  \*

> ... IBM has always been known in the information system industry as a company that provides added resources and added-value above and beyond the mere sale of computer hardware. It is axiomatic in the information systems industry that if a company wanted to play safe, it should purchase IBM for the support it provides to the customer.

Affidavit of Theodore Grossman, p. 5; Ex. 8 of Bennett Affidavit.[1]

Grossman's testimony and plaintiff's other arguments are insufficient to create an issue of fact regarding whether a special relationship existed. The undisputed facts are that plaintiff proposed a unique MIS Plan to FM, and FM adopted it and contracted with IBM to purchase computers according to the plan. Nothing in these facts (including IBM's overall business reputation, which is the essence of Grossman's testimony) establishes a "spe-cial relationship" within the reasoning of *Onita.* IBM's promotional use of the term "partners" in reference to its customers fails to create either a legal partnership or a "special relationship." IBM's internal concerns regarding the appropriateness of plaintiff's MIS Plan may indicate that IBM considered a different perspective on the plan than did plaintiff, but not necessarily that (1) IBM and plaintiff had a special relationship, nor (2) that IBM was obliged to disclose all of its doubts about the proposed system. IBM's "vendor" involvement with the MIS Plan fails to rise to the level of a requisite special relationship between IBM and plaintiff.

## II. ATK'S CONTRIBUTION CLAIM

■ IBM also seeks summary judgment on plaintiff's contribution claim. Contribution in Oregon is governed by ORS 18.440(1), which states that the right of contribution exists when "two or more parties become jointly or severally liable in tort for the same injury." The statute goes on to provide that there is no right of contribution from a person who is not liable in tort to the claimant. Accordingly, IBM must first have been liable in tort to FM before ATK is entitled to contribution from IBM for ATK's settlement.

Fred Meyer's loss was economic. *Onita* requires a special relationship before there is any liability for negligence or negligent misrepresentation. Just as between IBM and ATK, there is insufficient evidence to create a question of fact regarding the existence of a special relationship between IBM and FM. IBM was not paid for consulting services to FM, and received no compensation except that which was owed because of the sale of goods. Cy Green, president of FM, testified in deposition that he believed IBM was "a

---

1. IBM has moved to strike the conclusions Grossman draws in his affidavit (that IBM had a "special, non-adversarial relationship with Kearney and FM," and a duty to work with them beyond any contractual relationship; and that computer buyers like FM "look to the commitment of the computer hardware manufacturer ... to in essence form a partnership with the customer to successfully implement an information system"). Even if these conclusions are stricken, however, other assertions that "only the computer hardware manufacturer has the re-sources and knowledge of its customer base and its products to provide resources, advice and guidance to the customer and the customers' effort to implement an information system," and "IBM has always been known in the information system industry as a company that provides added resources and added-value above and beyond the mere sale of computer hardware" might remain admissible. The motion to strike is denied as moot; this court has considered the expert testimony in rendering its decision.

vendor selling a product" and nothing else. Simon Affidavit, Ex. 28.

Under *Onita*, an arm's-length, vendor-buyer relationship is not a "special relationship" for purposes of finding liability in negligence claims. IBM was nothing more than a seller commonly providing information incidental to its sales. FM never hired IBM or paid IBM for anything else.

In *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737 (2nd Cir.1979), the court said that even though additional services were contemplated from computer manufacturer Honeywell, "the contract [between computer vendor and buyer] remains one for sale if those services were merely incidental or collateral to the sale of goods." *Id.* at 743. Honeywell did not bill for services prior to or after installation, and such services were recognized by the court as "indicia of a contract for a sale of goods, and not the rendition of professional services." [2]

## III. *KEARNEY'S INDEMNITY CLAIM*

Finally, IBM seeks summary judgment on Kearney's claim for indemnity. In Oregon, an indemnity claim requires the claimant to show that the claimant discharged a legal obligation to a third party, and that the defendant was also liable to the third party. *See Fulton Insurance Co. v. White Motor Corp.*, 261 Or. 206, 493 P.2d 138 (1972) (plaintiff must prove it discharged a legal obligation owed to a third party; that defendant also was liable to the third party; and that as between the plaintiff and the defendant, the obligation should have been discharged by the latter). In accordance with the reasoning above, this court concludes that ATK has failed to show that IBM was liable to FM in tort. Plaintiff also fails to come forward with any other basis for finding liability.

## CONCLUSION

For the reasons stated in this Opinion, defendant's motion for summary judgment is granted. Plaintiff's motion for summary

judgment, and defendant's motion to strike are denied as moot.

---

**2.** Moreover, the fact that IBM happened to harbor some doubt as to the feasibility of the plan devised by its customer's consultant fails to create grounds for concluding that a special relationship existed.